**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANGEL LOPEZ and KAZUE KOIZUMI,** | |
| **Plaintiffs,** | **Civil Action No.: 23-23012 (ES) (CLW)** |
| **v.** | **OPINION** |
| **EDWARD PEC,** *et al.*, | |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

Before the Court are two motions to dismiss: (i) defendants "Brandon J. Broderick, Attorney at Law," Brandon J. Broderick, LLC, and Christopher Karounos, Esq.'s (together, the "Broderick Defendants") motion to dismiss (D.E. No. 21 ("Broderick Motion" or "Broderick Mot.")) plaintiffs Angel Lopez and Kazue Koizumi's (together, "Plaintiffs") Amended Complaint (D.E. No. 5 ("Amended Complaint" or "Am. Compl.")); and (ii) defendants Edward Pec and The Palisades, LLC's (together, the "Palisades Defendants," and collectively with the Broderick Defendants, "Defendants") motion to dismiss Plaintiffs' Amended Complaint (D.E. No. 23 ("Palisades Motion" or "Palisades Mot.")). Plaintiffs filed a joint opposition to both motions (*see* D.E. No. 25 ("Opp. Br.")), and the Broderick Defendants and the Palisades Defendants filed their respective replies (D.E. Nos. 28 ("Broderick Reply Br.") & 29 ("Palisades Reply Br.")). Having considered the parties' submissions in connection with the two motions, the Court decides these motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Broderick Defendants' motion to dismiss (D.E. No. 21) is **GRANTED**, and the Palisades Defendants' motion to dismiss (D.E. No. 23) is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiffs are married individuals who reside in Bergen County, New Jersey and are lessees of an apartment in a multi-unit complex located at 227 13th Street, Palisades Park, New Jersey 07650 (the "Complex").  (Am. Compl. at 3, ¶¶ 1–2 & 5, ¶ 16[2]).  Defendant The Palisades LLC "is a domestic limited liability corporation duly organized and existing under the laws of the State of New Jersey, authorized to do business in the State of New Jersey with a place of business address at 236-B Grant Avenue, Cliffside Park, New Jersey 07010" and at all relevant times "owned, designed, constructed and developed" the Complex.  (*Id.* at 3, ¶¶ 3–4).  The Palisades LLC is the lessor of Plaintiffs' apartment, and its employees, agents, and/or servants "operated, managed, controlled and are responsible for maintaining, repairing and cleaning the premises and [Complex]."  (*Id.* at 4, ¶ 5 & 5, ¶ 17).  Defendant Edward Pec was at all relevant times the landlord, owner, and/or majority shareholder for The Palisades LLC.  (*Id.* at 4, ¶ 6).

Defendant Brandon J. Broderick, LLC is a New Jersey limited liability company and at all relevant times "was a law firm with an address of 65 East Route 4, 1st Floor, River Edge, NJ 07661."  (*Id.* ¶¶ 9–10).  Defendant "Brandon J. Broderick, Attorney at Law" was also at all relevant times a "law firm with an address at 65 East Route 4, 1st Floor, River Edge, NJ 07661."[3]  (*Id.* ¶ 8). Defendant Christopher Karounos, Esq. was at all relevant times the attorney for the Palisades

---

[1]    The factual background is taken from the allegations in the Amended Complaint.  For purposes of the instant motions, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2]    Because the paragraphs in the Amended Complaint are not consecutively numbered, the Court cites to both the page and paragraph numbers where necessary when citing to the Amended Complaint herein.

[3]    It is unclear from the Amended Complaint what, if any, distinction exists between defendant "Brandon J. Broderick, LLC" and defendant "Brandon J. Broderick, Attorney at Law."

Defendants and was operating under the "authority of Brandon J. Broderick, Attorney at [L]aw or Brandon J. Broderick, LLC." (*Id.* ¶¶ 7 & 11).

### i.  Facts Related to the Palisades Defendants

The Palisades LLC converted the basement of the Complex into an extra living space (the "Apartment") and rented it to Plaintiffs. (*Id.* at 6, ¶ 1). According to Plaintiffs, the Apartment is "structurally defective wherein there are water leaks from every place including through cracks in the walls and from the ceiling" that make the Apartment "permanently wet, unlivable, and uninhabitable causing Angel Lopez to develop Asthma and Severe COPD."[4] (*Id.* ¶¶ 1–2). "Plaintiffs' bedroom and bathroom walls are coated with mold of various species and their living space is perpetually damp and humid." (*Id.* at 7, ¶ 5). Additionally, the electrical wiring in the Apartment "is faulty and the wires exist in a wet environment placing the [P]laintiffs at risk for electrocution and death." (*Id.* ¶ 6).

Plaintiffs allege that from September 2023 through the date they filed their Amended Complaint, the Palisades Defendants have refused to repair the water leaks and remediate the mold growth in their Apartment "[i]n order to make Plaintiffs uncomfortable and force their eviction[.]" (*Id.* at 10, ¶ 32; *see also id.* at 6–7 & 17–23). These conditions are adversely affecting Plaintiffs' health and worsening Lopez's asthma and COPD, and Plaintiffs have made the Palisades Defendants aware of these conditions on multiple occasions to no avail. (*See id.* at 12–13, ¶¶ 51–64). Plaintiffs also separately allege that Pec has stalked, tracked, and harassed Lopez, including video recording Lopez and stealing one of Lopez's packages. (*See id.* at 9–12, ¶¶ 31–50; *see also id.* at 14–17 (Count One)). Additionally, Plaintiffs generally state they originally filed

---

[4]    Plaintiffs do not define "COPD" in their Amended Complaint.

their complaints against Defendants in the New Jersey Superior Court.[5]  (*Id.* at 7, ¶ 8).

## ii. Facts Related to the Broderick Defendants

Plaintiffs allege the Broderick Defendants invaded Koizumi's privacy by allowing one of their staff members to eavesdrop and/or record certain privileged conversations Koizumi had with her attorney and subsequently asking Koizumi about those communications during her deposition in one of the related state court actions.  (*See id.* at 7–9 & 24–31 (Counts Six and Seven)). Specifically, on September 15, 2023, defendant Karounos asked plaintiff Koizumi, during her deposition in a related state court action, "to state whether her attorney made certain privileged statements to her moments before the deposition started." (*Id.* at 7, ¶ 10).  Karounos indicated that fictitious defendant Brandon J. Broderick Staff Doe[6] was near where Koizumi and her attorney were standing before Koizumi's deposition and heard Koizumi's attorney make various statements to her.  (*Id.* ¶ 12).  During Koizumi's deposition, Karounos repeated Koizumi's "attorney's private communications to her verbatim" even though those communications were only made to her in the context of an attorney-client relationship.  (*Id.* at 8, ¶ 14).  Koizumi did not disclose the privileged statements her attorney made to her.  (*Id.* ¶ 21).  According to Plaintiffs, Karounos pressed Koizumi in a coercive manner to answer him during her deposition and described "Koizumi's refusal to provide him with answers [] he desired related to privileged communications as 'perjury.'" (*Id.* ¶¶ 22–23).  "Koizumi became overwhelmed, distraught and anxious at the deposition which progressed into complaints of chest pain, which defense counsel suggested warranted that the

---

[5]        However, Plaintiffs did not list the docket numbers for any of their related state court actions, nor did they attach any of their related state court complaints as exhibits to either their Amended Complaint or their opposition to Defendants' motions to dismiss.

[6]        Plaintiff alleges that fictitious defendant "Brandon J. Broderick Staff Doe ('BBK Staff Doe')" was "an employee/agent staff member of Brandon J. Broderick, Attorney At Law or Brandon J, Broderick, LLC or Christopher Karounos, Esquire, who allegedly reported and disclosed Plaintiff Koizumi's privileged communications to Christopher Karounos, as disclosed and represented by [him] on the deposition record."  (Am. Compl. at 5, ¶ 15).

remainder of [her] deposition be adjourned for the day." (*Id.* at 8–9, ¶ 24). Plaintiffs allege the Broderick Defendants invaded Koizumi's privacy by obtaining and distributing her confidential privileged communications with her attorney. (*See id.* at 24–31 (Counts Six and Seven)).

### B.    Procedural History

On December 11, 2023, Plaintiffs initiated this action by filing the Complaint against Defendants and fictitious defendants "Brandon J. Broderick Staff Doe," "John Doe 1-10," "Jane Doe 1-10," "Company Doe 1-5," and "XYZ Corporation 1-10" (together, the "Fictitious Defendants"), alleging various state and federal law claims including discrimination, denial of public accommodation, harassment, invasion/violation of privacy, and intentional infliction of emotional distress. (*See generally* Compl.). On December 30, 2023, Plaintiffs filed an Amended Complaint against Defendants and the Fictitious Defendants alleging the following causes of action[7]: (i) "Harassment 25 CFR 11.443, Stalking/Cyber Stalking NJSA 2C:12-10, NJSA 2C:33-4, NJSA2C:20-3A, Continued Violation of Privacy (Edward Pec, The Palisades LLC, John Doe 1-5, Jane Doe 1-5)" (Count One); (ii) "Continued Violation of 42 USC 3601, 42 USC 3604, Continued Discrimination In Housing Based Upon Race, Disability and National Origin, Continued Denial of Title II of Civil Rights Act of 1964 42 U.S.C. §2000a, Continued Violation of Public Accommodation, Continued Violation of Title III 42 USC § 12182(a), Continued Negligence (Edward Pec, The Palisades LLC, John Doe 1-5, Jane Doe 1-5, XYZ Corp., Company Doe 1-5)" (Count Two); (iii) "28 USC 2201 et seq., FRCP 57 Declaratory Judg[]ment and Emergency Restraint and Injunctive Relief (The Palisades, LLC, Edward Pec)" (Count Three); (iv) "Continued Tort of Reckless, Intentional, Infliction of Severe Emotional Distress (Edward Pec,

---

[7]    Because Plaintiffs assert multiple alleged causes of action within each individual Count of the Amended Complaint, it is difficult to parse out which plaintiff is asserting which claims, how many particular claims Plaintiffs collectively are bringing, and under which law(s) they are bringing those claims. Thus, the Court lists the alleged causes of action here as Plaintiffs have plead them in the Amended Complaint.

The Palisades, LLC, John Doe 1-5, Jane Doe 1-5)" (Count Four); (v) "Continued Denial of Public Accommodation Under NJSA10:1-2; NJSA10:5-4; NJSA10:5-12(d)(e)(f) (Edward Pec, The Palisades LLC)" (Count Five); (vi) "Invasion of Privacy (Violation of Attorney Client Privilege), Reckless, Intentional Infliction of Severe Emotional Distress (Christopher Karounos, Esquire, Brandon J. Broderick, Attorney At Law, Brandon J. Broderick, LLC, BBK Staff Doe)" (Count Six); (vii) "Place of Public Accommodation, NJSAl0:1-2: NJSA 10:5-4; NJSA 10:5-12(d)(e)(f), New Jersey Constitution Art 1 Para 1, 5, 18, Ptasynski v Ehiri Uwaneme, 371 N.J.Super 333 (App. Div. 2004) (Christopher Karounos, Esquire, Brandon J. Broderick, Attorney At Law, Brandon J. Broderick, LLC, BBK Staff Doe)"[8] (Count Seven); (viii) "Class Action" (Count Eight); (ix) "Punitive Damages" (Count Nine). (*See generally* Am. Compl.). Plaintiffs seek the following relief in their Amended Complaint: (i) a preliminary injunction compelling the Palisades Defendants "to hire competent experts to immediately remediate the mold and properly repair the sources of all water leaks"; (ii) a temporary restraining order ("TRO") and preliminary injunction enjoining the Palisades Defendants "and their officers, agents, employees, assigns, successors and all persons acting in concert with them from collecting rent from [P]laintiffs until all the repairs are made"; (iii) a declaration that the Palisades Defendants' actions and inactions "violate 42 USC 3601, 42 USC 3604, 42 USC §12182(a), 42 U.S.C. §2000a, 25 CFR § 11.443, NJSA 2C:12-10, NJSAl0:1-2; NJSAI0:5-4; NJSA10:5-12(d)(e)(f), NJ Constitution Art 1, para 1, 5, 18"; (iv) a declaration that the Broderick Defendants' actions "violate NJ Constitution Art 1, para 1, 5, 18, and NJSAl0:1-2; NJSA 10:5-4; NJSA 10: 5-12(d)(e)(f)"; and (v) a "[j]udgment for monetary

---

[8]    It is unclear to the Court why a state court case name and citation is listed among the causes of action alleged in Count Seven of the Amended Complaint. Absent any additional information from Plaintiffs, the Court assumes the inclusion of this case name and citation in this count was inadvertent.

damages, both past and future, both compensatory and punitive with costs, for emotional distress and other injuries, with interest and attorney's fees." (*Id.* at 34–35).

On March 22, 2024, Defendants filed their respective motions to dismiss Plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Broderick Mot.; D.E. No. 21-1 ("Broderick Mov. Br."); Palisades Mot.; D.E. No. 23-1 ("Palisades Mov. Br.")).[9] The motions are fully briefed. (*See* Broderick Mov. Br.; Palisades Mov. Br.; Opp. Br.;[10] Broderick Reply Br.; Palisades Reply Br.).

On July 26, 2024, the Broderick Defendants filed a motion to stay all discovery pending the Court's ruling on their motion to dismiss. (D.E. No. 36). On August 1, 2024, Plaintiffs filed a letter stating they did not object to the Broderick Defendants' motion to stay. (D.E. No. 37). On August 9, 2024, the Honorable Cathy L. Waldor, U.S.M.J., granted the Broderick Defendants' unopposed motion to stay all discovery pending the Court's decision on Defendants' respective motions to dismiss (D.E. No. 38), and accordingly discovery in this matter currently remains stayed.

## II.    LEGAL STANDARD

### A.      Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Federal courts have limited jurisdiction and can adjudicate cases and controversies only as permitted under Article III of the Constitution. *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322–23 (3d Cir. 1998) ("The existence of a case and

---

[9]      In addition to their motion, the Broderick Defendants "also join, adopt and incorporate by reference the arguments" in the Palisades Defendants' Motion, including those submitted on reply. (Broderick Mov. Br. at 2 n.1; Broderick Reply Br. at 1 n.2). The Palisades Defendants likewise "join, adopt, and also incorporate by reference" the arguments made in the Broderick Defendants' Motion, and in particular, "adopt the Statement of Facts and Procedural History and full Legal Argument sections" of the Broderick Defendants' Motion, including those submitted on reply. (Palisades Mov. Br. at 1; Palisades Reply Br. at 1).

[10]     Plaintiffs also submitted declarations and various exhibits, totaling over 250 pages combined, in support of their opposition to Defendants' motions to dismiss. (*See generally* D.E. No. 24).

controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."). Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See Ridge*, 150 F.3d at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)). The party seeking to invoke federal jurisdiction has the burden of establishing subject matter jurisdiction. *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Under Federal Rule of Civil Procedure 12, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court ***must*** dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

"Rule 12(b)(1) governs jurisdictional challenges to a complaint." *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

A motion to dismiss under Rule 12(b)(1) "attacks [] the right of a plaintiff to be heard in Federal court." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999). In deciding a 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed." *Leadbeater v. JPMorgan Chase, N.A.*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." *Id.* (citing *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A facial challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the

court because, for example, it does not present a question of federal law," or because there is no diversity of citizenship among the parties, or because there is some other jurisdictional defect. *Aichele*, 757 F.3d at 358. "In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). Thus, when a Rule 12(b)(1) motion is a facial attack, it is handled much like a Rule 12(b)(6) motion, and allegations in the complaint must be accepted as true. *Leadbeater*, 2017 WL 4790384, at *3. On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Perry v. OCNAC #1 Fed. C.U.*, 423 F. Supp. 3d 67, 73 (D.N.J. 2019) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Aichele*, 757 F.3d at 358 (explaining the differences between a facial attack and a factual attack under Rule 12(b)(1)).

Here, Defendants' attack appears to be facial (*see* Broderick Mov. Br. at 4), and accordingly the Court will only consider the allegations in the Amended Complaint and the documents incorporated by reference or integral to Plaintiffs' claims therein, as discussed more fully below, in determining whether it has subject matter jurisdiction over Plaintiffs' claims.

### B.    Rule 12(b)(6) – Failure to State a Claim

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of

the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79

(quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*,

629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when

deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

(3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits

attached to the complaint, matters of public record, as well as undisputedly authentic documents

if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223,

230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)

(noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or

submitted with the complaint, and any 'matters incorporated by reference or integral to the claim,

items subject to judicial notice, matters of public record, orders, [and] items appearing in the record

of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d

548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal

Practice & Procedure* § 1357 (3d ed. 2004))).  Thus, "a court may consider 'an undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document.'"  *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL

5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-

16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### III.    DISCUSSION

The Court begins by addressing one threshold point regarding its consideration of documents extraneous to the pleadings.  Here, the Palisades Defendants attached as exhibits to their motion certain filings from Plaintiffs' related state court actions (*see* D.E. No. 23-3), and separately Plaintiffs attached several extraneous exhibits, totaling over 250 pages, to its opposition to Defendants' motions to dismiss—including a declaration from Lopez, Koizumi's deposition transcript taken in one of the related state court proceedings, various photographs, a doctor's letter, and a police incident report (*see* D.E. No. 24; D.E. Nos. 24-2 through 24-11)—which documents were not attached to the Amended Complaint.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *Burlington Coat Factory*, 114 F.3d at 1426 (citation omitted). Rather, "[i]n deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing cases); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) ("Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss"); *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999) ("It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record."); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 n.21 (D.N.J. 1998) ("[U]nless a Court converts a Rule 12(b)(6) motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the Court cannot consider material outside the pleadings (i.e. facts presented in briefs, affidavits or exhibits).").  "A document forms the basis of a claim if the document is 'integral to or explicitly

relied upon in the complaint.'" *Lum*, 361 F.3d at 221 n.3 (quoting *Burlington Coat Factory*, 114 F.3d at 1426). Additionally, as noted above, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller*, 2020 WL 5036215, at *2 (citation omitted). Moreover, courts may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists. *See U.S. ex rel. Atkinson*, 473 F.3d at 514. However, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Fenwick v. Sotheby's*, No. 21-11987, 2022 WL 1002098, at *6 (D.N.J. Apr. 4, 2022) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

Thus, in ruling on Defendants' motions to dismiss and determining whether this Court has subject matter jurisdiction over this action, the Court will consider both the facts alleged in Plaintiffs' Amended Complaint and the filings from Plaintiffs' related state court actions attached to the Palisades Defendants' Motion as "matters incorporated by reference or integral to [Plaintiffs'] claim[s]" in the Amended Complaint, "items subject to judicial notice," and/or "matters of public record." However, the Court will not consider Lopez's declaration, nor the other extraneous exhibits Plaintiffs submitted in opposition to Defendants' motions to dismiss,[11] because these documents were not submitted with the Amended Complaint, and "[a] party cannot amend a complaint by the brief [or exhibits thereto] in opposition to a motion to dismiss." *Pierre-Charles v. Consumer Portfolio Servs., Inc.*, No. 17-10025, 2018 WL 3425737, at *6 (D.N.J. July 16, 2018) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Moreover, none of these extraneous exhibits appear to be clearly "subject to judicial notice," "matters of public

---

[11]     The Court notes that while it acknowledges the existence of Koizumi's deposition testimony in the related state court action, it does not, and cannot, consider the substance of that testimony. *See Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018).

record," or "undisputably authentic documents." *See Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018) ("Public records include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, judicial opinions, and hearing transcripts. Under the Rule 12(b)(6) standard, courts also may consider deposition testimony, but only for the existence of the testimony—not for the truth of the facts asserted therein." (citations omitted)); *Kinch v. Caulfield*, No. 23-2076, 2024 WL 1653667, at *3 (D.N.J. Apr. 17, 2024) ("The Court will not consider the additional documents [including police incident reports] in the opposition for the purpose of this motion to dismiss, as they were not included in the [c]omplaint." (citing cases)); *Brief v. Idelle Labs, Ltd.*, No. 22-5085, 2023 WL 2860345, at *2 (D.N.J. Apr. 10, 2023) (determining that for purposes of deciding a motion to dismiss, "apart from matters of public record and materials relied on in the [amended complaint]," the court would not consider plaintiff's "[c]ertification, photographs, or other exhibits extraneous to the [amended complaint] that [p]laintiffs have submitted in opposition to [d]efendant's motion to dismiss"); *see also N.J. Brain & Spine Ctr. v. Anthem Blue Cross Blue Shield*, No. 11-6379, 2012 WL 2952423, at *4 (D.N.J. July 18, 2012) ("On a Rule 12(b)(6) motion to dismiss, courts will not consider documents that are not 'directly incorporated in or attached to the Complaint,' or those that are not public record." (quoting *Stapperfenne v. Nova Healthcare Administrators, Inc.*, No. 05-4883, 2006 WL 1044456, at *3 (D.N.J. Apr. 17, 2006))). Further, even if the Court did consider these extraneous exhibits, they appear to relate to Plaintiffs' state law claims over which this Court lacks subject matter jurisdiction, as explained below.

The Court will now address the Broderick Defendants' Motion and the Palisades Defendants' Motion in turn.

### A.      The Broderick Defendants' Motion To Dismiss

Plaintiffs allege four causes of action against the Broderick Defendants in the Amended Complaint: (i) "Invasion of Privacy (Violation of Attorney Client Privilege), Reckless, Intentional Infliction of Severe Emotional Distress" (Count Six); (ii) "Place of Public Accommodation, NJSAl0:1-2; NJSA 10:5-4; NJSA 10: 5-12(d)(e)(f), New Jersey Constitution Art. 1 Para 1, 5, 18" (Count Seven); (iii) "Class Action" (Count Eight); and (iv) "Punitive Damages" (Count Nine). (*See* Am. Compl. at 24–34).

The Broderick Defendants argue Plaintiffs' claims against them in the Amended Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim. (*See generally* Broderick Mov. Br.). Specifically, the Broderick Defendants argue this Court lacks subject matter jurisdiction over Plaintiffs' causes of action asserted against them—i.e., claims "sounding in invasion of privacy, intentional infliction of emotional distress, and various alleged state statutory and constitutional violations"—because, to the extent independently viable, these causes of action are purely state law claims asserted against concededly non-diverse defendants, and the Court has no basis upon which to exercise supplemental jurisdiction over those claims.[12] (*See id.* at 6–10). The Broderick Defendants contend that even assuming, *arguendo*, the Court found it could exercise supplemental jurisdiction over Plaintiffs' state law claims asserted against them, the Court should decline to do so. (*Id.* at 8–10). The Broderick Defendants also assert Plaintiffs' state law claims "neither share, nor derive from, a common nucleus of facts" with

---

[12]     Plaintiffs do not allege any federal claims against the Broderick Defendants in the Amended Complaint. (*See generally* Am. Compl.). Accordingly, the Court lacks federal question jurisdiction over Plaintiffs' claims against the Broderick Defendants. Further, it appears undisputed that Plaintiffs and the Broderick Defendants are all residents of New Jersey (*see id.* at 3, ¶¶ 1–2 & 4–5, ¶¶ 7–14), and therefore the Court also lacks diversity jurisdiction over Plaintiffs' claims against the Broderick Defendants. Indeed, Plaintiffs do not contend otherwise. (*See generally* Opp. Br.). Thus, the only way this Court could have subject matter jurisdiction over Plaintiffs' claims against the Broderick Defendants is by exercising supplemental jurisdiction over those claims.

Plaintiffs' federal claims asserted solely against the Palisades Defendants. (*Id.* at 8). Additionally, the Broderick Defendants state "[t]his action is inextricably linked to pending state court actions,"[13] "the dispute between the parties pertains to matters of state law, and not federal law," and that "Plaintiffs['] filing of duplicative and related claims in a new forum is a clear indication of forum-shopping, which gamesmanship should not be condoned." (*Id.* at 10). Accordingly, the Broderick Defendants submit Plaintiffs' state law claims in Counts Six and Seven of the Amended Complaint should be dismissed against them for lack of subject matter jurisdiction. (*See id.* at 6–10).

The Broderick Defendants further argue that Plaintiffs' claims for "class action" and "punitive damages" in Counts Eight and Nine of the Amended Complaint should likewise be dismissed because "the class action claim under Rule 23 would be a standalone cause of action that cannot exist on its own"[14] and "a punitive damages claim is not recognized as an independent cause of action" but rather is a form of relief sought. (*Id.* at 10–13). Thus, the Broderick Defendants contend those two counts should be dismissed for failure to state a claim. (*Id.*).

In opposition, Plaintiffs argue the Broderick Defendants "violated ethics" and plaintiff Koizumi's "civil and constitutional rights on September 14, 2023 when they eaves dropped [*sic*] on her privileged communications with her attorney [and] then publicized the privileged communication during her deposition by trying to force and bully [her] to admit that certain privileged communication [*sic*] were made between [her] and her attorney." (Opp. Br. at 2).

---

[13]     Counsel for the Broderick Defendants submitted a declaration pursuant to Local Civil Rule 11.2 in connection with the Broderick Motion, declaring that "this matter is partially the subject of consolidated actions pending in the New Jersey Superior Court, Law Division, Bergen County under docket numbers BER-L-5926-20 and BER-L-3575-22." (D.E. No. 21-2 at 1).

[14]     The Broderick Defendants also assert in the alternative that "to the extent Plaintiffs contend that their 'class action' claim is instead being asserted under New Jersey's Rule 4:32-1, the Court should decline to exercise supplemental jurisdiction over that purely state law claim for the reasons addressed *supra* (and which likewise cannot be pursued independently in state court)." (Broderick Mov. Br. at 12).

Plaintiffs also contend that "by adopting, joining and incorporating by reference the arguments addressed in the contemporaneous motion to dismiss filed by the Palisades Defendants," the Broderick Defendants "admit that they were properly joined with the Palisades [D]efendants." (*Id.* at 3). Plaintiffs assert the Court has supplemental jurisdiction over Plaintiffs' purely state law claims against the Broderick Defendants based on the Court's federal question jurisdiction over Plaintiffs' alleged federal claims against the Palisades Defendants. (*Id.* at 13−16). According to Plaintiffs, the Court should exercise supplemental jurisdiction over its state law claims "based on the principles of judicial economy, convenience, fairness, and comity as set forth in the *Gibbs* case" and because the claims against the Broderick Defendants "arise from a common nucleus of operate facts" in that the federal claims they alleged against the Palisades Defendants "necessarily brought the state claims" against the Broderick Defendants. (*Id.* at 15−16).

In reply, the Broderick Defendants argue Plaintiffs' opposition "is both legally and procedurally defective, and [] oddly focuses on several legal matters that were not raised by either [them] or the Palisades Defendants in their moving papers (including issues concerning the statute of limitations and standing)." (Broderick Reply Br. at 1). The Broderick Defendants contend that Plaintiffs also improperly submitted and rely upon factual materials beyond the Amended Complaint's scope "in the form of sworn declarations, photographs and an entire deposition transcript of Plaintiff Koizumi taken in the underlying state court proceeding[.]" (*Id.*). The Broderick Defendants reiterate that Plaintiffs' state law claims in Counts Six and Seven of the Amended Complaint should be dismissed for lack of subject matter jurisdiction and that Plaintiffs' claims in Counts Eight and Nine of the Amended Complaint should be dismissed for failure to state a claim. (*Id.* at 2−8).

"The burden of establishing federal jurisdiction rests with the party asserting its

existence." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).  Thus, here Plaintiffs bear the burden of showing this Court has subject matter jurisdiction over this action. *See Wills v. USP Canaan*, 635 F. App'x 5, 8 (3d Cir. 2015).  Plaintiffs have failed to meet that burden as to their claims against the Broderick Defendants.  Indeed, Plaintiffs do not seem to dispute that the Court lacks both federal question and diversity jurisdiction over their claims against the Broderick Defendants.  (*See generally* Opp. Br.).  Rather, Plaintiffs contend the Court should exercise supplemental jurisdiction over those claims "based on the principles of judicial economy, convenience, fairness, and comity" and because those claims allegedly "arise from a 'common nucleus of operate facts'" as Plaintiffs' federal claims against the Palisades Defendants. (*Id.* at 15).  However, Plaintiffs do not explain how the principles of judicial economy, convenience, fairness, or comity apply to the facts of this action, nor do Plaintiffs convince the Court why it should exercise supplemental jurisdiction over purely state law claims against non-diverse defendants.  Plaintiffs also do not explain why these claims, stemming from alleged conduct during a deposition that took place in a related state court action, should be adjudicated in this Court.  Thus, the Court declines to exercise supplemental jurisdiction over the purely state law claims asserted against the Broderick Defendants in Counts Six and Seven of the Amended Complaint, and therefore those counts are **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

Moreover, Plaintiffs do not meaningfully oppose the Broderick Defendants' arguments with respect to Counts Eight and Nine of the Amended Complaint, but rather simply state these claims should not be dismissed.  (*See* Opp. Br. at 33–36).  As to Plaintiffs' "class action" claim in Count Eight of the Amended Complaint, Plaintiffs do not specify under which law or laws they are bringing this claim, but to the extent Plaintiffs are bringing this claim under Federal Rule of

Civil Procedure 23, that claim fails.  A class action under Rule 23 is not an independent cause of action; rather, it is a procedural mechanism upon which class representatives can rely to aggregate claims while asserting independent, substantive causes of action on behalf of a class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (explaining that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right'" (quoting 28 U.S.C. § 2072(b))); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (similar); *see also Diaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12, 15–16 (1st Cir. 2007) ("Both state and federal class action provisions have been construed to confer no substantive rights. . . . Thus, the courts that have considered the issue have held that procedural class action provisions neither create substantive rights nor give rise to an independent cause of action. We have found no case contrary to this holding[.]" (citing cases)); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985) (stating Federal Rule of Civil Procedure 23 "is a rule of procedure and creates no substantive rights or remedies enforceable in federal court"); *Vongrabe v. Rice*, No. 06-0152, 2006 WL 8439264, at *5 n.5 (M.D. Fla. Oct. 25, 2006) ("Rule 23.1 is a rule of procedure that sets forth pleading requirements for derivative actions; it does not provide an independent cause of action under federal law.").  Tellingly, Plaintiffs do not cite to any legal authority to the contrary nor any case law stating a plaintiff can bring a class action as an independent cause of action in a complaint in federal court.  Thus, to the extent Plaintiffs are bringing their "class action" claim in Count Eight of the Amended Complaint under Rule 23, this count fails to state a claim.  Accordingly, Count Eight of the Amended Complaint is **DISMISSED** *without prejudice* for failure to state a claim.[15]

As to Plaintiffs' "punitive damages" claim in Count Nine of the Amended Complaint, that

---

[15]    To the extent Plaintiffs are alternatively bringing this "class action" claim under state law, the Court declines to exercise supplemental jurisdiction over that claim, and that claim is dismissed for lack of subject matter jurisdiction.

count likewise fails to state a claim.  As the Broderick Defendants argue, a punitive damages claim is not recognized as an independent cause of action, but rather punitive damages are "a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves." *DiAntonio v. Vanguard Funding, LLC*, 111 F. Supp. 3d 579, 585 (D.N.J. 2015) (alteration in original) (quoting *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000)); *see also id.* (dismissing standalone punitive damages claim *with prejudice*); *Bond v. Solvay Specialty Polymers USA, LLC*, 583 F. Supp. 3d 643, 654 (D.N.J. 2022) ("[T]he Court agrees that an independent count for punitive damages is not cognizable." (citing *Smith v. Covidien LP*, No. 19-11981, 2019 WL 7374793, at *10 (D.N.J. Dec. 31, 2019))); *Incorvati v. Best Buy Co.*, No. 10-1939, 2010 WL 4807062, at *12–13 (D.N.J. Nov. 16, 2010) (finding plaintiff "improperly pled punitive damages as a separate [c]ount in the [c]omplaint" and dismissing that count, noting "the general rule is that there is no cause of action for punitive damages").  Indeed, Plaintiffs do not cite to any legal authority stating otherwise.  While Plaintiffs are not prohibited from seeking punitive damages as a remedy to the extent they can sufficiently state a claim and punitive damages are available for that claim, Plaintiffs cannot assert punitive damages as a standalone cause of action.  As Count Nine of the Amended Complaint does not (and cannot) state an independent cause of action, that count is **DISMISSED** *with prejudice*.

Therefore, the Broderick Defendants' Motion to Dismiss (D.E. No. 21) is **GRANTED**, and accordingly Counts Six and Seven of the Amended Complaint (D.E. No. 5) are **DISMISSED** *without prejudice* for lack of subject matter jurisdiction, Count Eight of the Amended Complaint (D.E. No. 5) is **DISMISSED** *without prejudice* for failure to state a claim, and Count Nine of the Amended Complaint (D.E. No. 5) is **DISMISSED** *with prejudice* for failure to state a claim.

### B.    The Palisades Defendants' Motion To Dismiss

Plaintiffs allege five causes of action against the Palisades Defendants in the Amended Complaint: (i) "Harassment 25 CFR 11.443, Stalking/Cyber Stalking NJSA 2C:12-10, NJSA 2C:33-4, NJSA2C:20-3A, Continued Violation of Privacy" (Count One); (ii) "Continued Violation of 42 USC 3601, 42 USC 3604, Continued Discrimination In Housing Based Upon Race, Disability and National Origin, Continued Denial of Title II of Civil Rights Act of 1964 42 U.S.C. §2000a, Continued Violation of Public Accommodation, Continued Violation of Title III 42 USC § 12182(a), Continued Negligence" (Count Two); (iii) "28 USC 2201 et seq., FRCP 57 Declaratory Judg[]ment and Emergency Restraint and Injunctive Relief" (Count Three); (iv) "Continued Tort of Reckless, Intentional Infliction of Severe Emotional Distress" (Count Four); and (v) "Continued Denial of Public Accommodation Under NJSA10:1-2; NJSA10:5-4; NJSA10:5-12(d)(e)(f)" (Count Five).  (*See* Am. Compl. at 14–23).

The Palisades Defendants argue Plaintiffs' claims against them in the Amended Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim.  (*See generally* Palisades Mov. Br.).  Specifically, the Palisades Defendants argue this action is "a regurgitation of Plaintiffs' specious claims in the Bergen and Passaic County Superior Courts, and a pending Interlocutory Appeal regarding State Court Rulings that unambiguously dismissed, With Prejudice, Plaintiff Angel Lopez's claims due to his continued and unscrupulous machinations."[16]

---

[16]    Counsel for the Palisades Defendants submitted a declaration pursuant to Local Civil Rule 11.2 in connection with the Palisades Motion, declaring that "this matter is partially the subject of consolidated actions pending in the New Jersey Superior Court, Law Division, Bergen County under docket numbers BER-L-5926-20 and BER-L-3575-22 and Passaic County under docket number PAS-L-965-23," noting that the Passaic County action was "originally filed under [docket number] BER-L-1671-23 and transferred, *sua sponte*, due to claims against the Bergen County Superior Court itself and a sitting Bergen County Superior Court Judge, [which] claims have already been dismissed." (D.E. No. 23-2 at 1).  Counsel further states that "[t]his matter is also partially the subject of an approved Interlocutory Appeal pending in the Superior Court of New Jersey, Appellate Division, under [d]ocket [number] A-001267-23T2." (*Id.*).  The Palisades Defendants attached as exhibits to their motion, among other things: (i) a copy of the complaint filed in the state court action bearing docket number BER-L-005926-20 (*see* D.E. No. 23-3 at 5–28); (ii) a copy of the complaint filed in the state court action bearing docket number BER-L-001671-23 (*see id.* at 77–105); and (iii) a copy

(*Id.* at 2). The Palisades Defendants contend "Plaintiffs have a documented history of slinging baseless accusations against defense counsel for holding Plaintiffs[] to their proofs, and filing actions against Judges, the Superior Court itself when they are unhappy with the Courts' Orders and Rulings." (*Id.*). The Palisades Defendants assert this action is Plaintiffs' attempt to seek "a third bite at the proverbial apple by forum shopping the same claims" against them as in state court and "adding additional frivolous claims against the Broderick Defendants—purely for leverage, while they plainly are under the deadlines of an active [b]riefing [s]chedule in the [New Jersey] Appellate Division seeking to overturn [s]tate [c]ourt [r]ulings dealing with the same allegations pending in this action." (*Id.* at 3).

According to the Palisades Defendants, Plaintiffs' five counts against them in the Amended Complaint are the same causes of action Plaintiffs alleged against them in state court, and all currently remain pending in state court; in other words, they "are identical to matters pending in the [New Jersey] Law Division and Appellate Division[.]" (*Id.* at 3–4). Additionally, the Palisades Defendants state that "[e]ven if any of these claims are independently viable herein, each are unequivocally asserted under state laws and legal theories"; moreover, "[b]ecause Plaintiffs' allegations lack any actual federal questions not already pled under State law, . . . this Court lacks subject matter jurisdiction over those claims" and "[t]here is no basis for Plaintiffs to credibly argue why this Court should nevertheless exercise supplemental jurisdiction over them." (*Id.* at 4). The Palisades Defendants contend the proper procedure is for Plaintiffs to file a motion to amend their existing state court pleadings, not file an action in this Court. (*Id.* at 7). Therefore, the Palisades Defendants submit Plaintiffs' claims against them each fail as a matter of law and

---

of the amended complaint filed in the state court action bearing docket number BER-L-003575-22 (*see id.* at 107–58). As noted above, the Court considers these documents as incorporated by reference or integral to Plaintiffs' claims in the Amended Complaint.

should be dismissed with prejudice. (*Id.* at 3–4).

In opposition, Plaintiffs argue the Palisades Defendants "incorrectly contend that [P]laintiffs' claims against them were largely rejected in the New Jersey Superior Court" but that they "never made" these claims in state Court and the claims made against them in state court have not yet been heard. (Opp. Br. at 4). Plaintiffs state the only claim they made against the Palisades Defendants in state court that has been decided on the merits was a loss of consortium claim by Koizumi. (*Id.*). Plaintiffs contend the Palisades Defendants omit that a Bergen County Judge dismissed "Lopez's case *with prejudice* for failure to attend his deposition" after allegedly denying Lopez disability accommodations for his deposition, among other things. (*Id.* (emphasis added)). Plaintiffs further assert this Court has subject matter jurisdiction over this action because it alleges claims against the Palisades Defendants under Title III of the Americans with Disabilities Act ("ADA"), Title II of the Civil Rights Act, and the Fair Housing Act ("FHA"), and that because the Court has original jurisdiction over those claims, they have supplemental jurisdiction over Plaintiffs' remaining state law claims. (*Id.* at 13–16). Plaintiffs also make Article III standing- and statute-of-limitations-related arguments that do not appear to be responding to any specific arguments raised in the Palisades Defendants' Motion. (*Id.* at 16–19). Plaintiffs state none of their claims in the Amended Complaint should be dismissed. (*See id.* at 19–36).

In reply, the Palisades Defendants argue that each of Plaintiffs' alleged violations "all took place during Court[-]Ordered discovery processes and/or as part of the commercial tenancy action in State Court." (Palisades Reply Br. at 5). The Palisades Defendants state Plaintiffs' remedy for any perceived wrongs in the state court actions, and any "new" allegations arising from those ongoing matters "fall squarely under New Jersey Court Rule 4:9-1 regarding amendment of pleadings" rather than "this open and obvious end run around negative Superior Court decisions"

22

and Plaintiffs' attempt at forum shopping. (*Id.* at 6). Further, the Palisades Defendants assert "Plaintiffs' actions here appear to fly in the face of the Entire Controversy Doctrine since they literally have had "controversies pending for years arising from the same transactions and occurrences" and all Plaintiffs "are trying to accomplish in their Federal Court filing is to say that, even though the alleged harms are 'continuing,' and indisputably all arise out of and during the issues brought up in the State Court cases, somehow they belong in this alternative forum." (*Id.* at 8). The Palisades Defendants submit this Court should grant their motion to dismiss and dismiss Plaintiffs' claims with prejudice because Plaintiffs are already in a forum—New Jersey State Court—that is hearing their grievances, and there is nothing new or appropriate to confer jurisdiction in this Court. (*Id.* at 9).

"[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt" and the Court may *sua sponte* raise subject-matter jurisdiction concerns. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative . . . ."). Thus, the Court first addresses whether it has subject matter jurisdiction over Plaintiffs' claims against the Palisades Defendants, and relevant to that analysis, it assesses the *Rooker-Feldman* and *Younger* and *Colorado River* abstention doctrines, even though these were not briefed by the parties.

### i. *Rooker-Feldman*

The *Rooker-Feldman* doctrine bars federal district courts from hearing cases "that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). In other words, the *Rooker-Feldman* doctrine bars a suit where "a favorable decision in federal court would require negating or reversing the state-

23

court decision." *Id.* at 170 n.4 (citations omitted).  Thus, "*Rooker-Feldman* bars a federal proceeding when 'entertaining the federal court claim would be the equivalent of an appellate review' of the state judgment." *Karas v. Robbins*, No. 08-5264, 2009 WL 2912778, at *5 (D.N.J. Sept. 9, 2009) (quoting *FOCUS v. Alleghany Cnty. Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)).  For example, the Third Circuit has specifically held that the *Rooker-Feldman* doctrine bars federal courts from providing relief that would invalidate a state court foreclosure decision. *See, e.g.*, *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 51 (3d Cir. 2013); *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 152 (3d Cir. 2008); *Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005).

There are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (cleaned up).  "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

Additionally, for *Rooker-Feldman* to apply, the party against whom the doctrine is asserted need not have proactively litigated the issue in the prior state court proceeding.  *See Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir. 1992).  Rather, the doctrine bars re-litigation where the party merely had a "full and fair opportunity" to litigate the issue in the prior proceeding.  *See id.*  And finally, a plaintiff may not avoid *Rooker-Feldman* simply by naming defendants in a subsequent federal action who were not a party to the underlying state court case.  *See Bass v. Butler*, 116 F.

24

App'x 376, 385 (3d Cir. 2004). Rather, the doctrine "only requires identity of the party against whom the doctrine is being invoked. Just as with collateral estoppel, there is no convincing reason to require identity of the party seeking to bar a claim under *Rooker-Feldman*." *Id.* (citation omitted).

Here, to the extent Plaintiffs assert the same or similar claims against Defendants in their Amended Complaint in this Court as they asserted (or could have asserted) against Defendants in their state court actions, and in particular, the state court complaints dismissed *with prejudice*,[17] those claims are dismissed for lack of subject matter jurisdiction as improper and barred by the *Rooker-Feldman* doctrine. Moreover, it appears the state appellate process for Plaintiffs' related state court actions is still ongoing (*see* Opp. Br. at 4), and it would be inappropriate and improper for this Court to interfere with the state appellate process.[18]

It is clear that the gravamen of Plaintiffs' claims in the instant action relate wholly to and are inextricably intertwined with the pending state court actions involving the same or similar claims related to the landlord-tenant disputes between Plaintiffs and the Palisades Defendants. A

---

[17] *See* Order, No. BER-L-005926-20 (N.J. Sup. Ct. Mar. 16, 2023) (dismissing *with prejudice* all claims made by Lopez against the Palisades Defendants in the state court actions bearing docket numbers BER-L-005926-20 and BER-L-003575-22); Order, No. BER-L-005926-20 (N.J. Sup. Ct. Nov. 6, 2023) (stating Plaintiffs' complaint against the Palisades Defendants shall remain dismissed *with prejudice* for Plaintiffs' failure to comply with the state court's orders); Order, No. BER-L-005956-20 (N.J. Sup. Ct. Dec. 8, 2023) (denying Plaintiffs' motion to reconsider the court's March 16, 2023 dismissal order). Copies of these three orders were attached as exhibits to the Palisades Defendants' Motion (*see* D.E. No. 23-3 at 30–35, 41–42, & 55–57), and, as noted above, the Court can consider these documents (as incorporated by reference or integral to Plaintiffs' claims) for purposes of determining whether it has subject matter jurisdiction over Plaintiffs' claims.

[18] The Civil Case Information Statement Plaintiffs submitted to the New Jersey Appellate Division for Lopez's appeal of the state court matter dismissed with prejudice reflects in relevant part that "On October 7, 2020, Plaintiff Lopez had filed a lawsuit in the Bergen County Superior Court after he developed Asthma and Severe COPD in his rental apartment from Mold caused by his landlord's refusal to repair the severe water leaks that causes severe mold growth all over the apartment" and that Lopez "is a Disabled American who is being denied" disability and public accommodations. (*See* D.E. No. 23-3 at 63–73). These claims are nearly identical to the claims Plaintiffs assert in the Amended Complaint. Thus, all of Plaintiffs' claims in the Amended Complaint that are the subject of the matter pending before the New Jersey Appellate Division are dismissed as not properly before this Court and/or barred by the *Rooker-Feldman* doctrine. To the extent Koizumi contends the *Rooker-Feldman* doctrine does not apply to her claims in the Amended Complaint, her claims are separately dismissed for lack of subject matter jurisdiction and/or failure to state a claim, as discussed herein.

federal claim is "inextricably intertwined" with a prior state adjudication "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *FOCUS*, 75 F.3d at 840 (citation omitted). Even assuming, *arguendo*, Plaintiffs prevailed on their claims in this Court, the resulting decision would effectively reverse the state court decisions or void the state court's rulings. *See id.* The New Jersey state court landlord-tenant actions between Plaintiffs and the Palisades Defendants, and the decisions made in those actions, are the very basis for Plaintiffs' commencement of the instant federal court action. A ruling by this Court in favor of Plaintiffs would have the effect of overruling and/or vacating the state court orders and judgments entered (or that may be entered) during the course of the state court actions. To the extent any of Plaintiffs' claims in the instant action were not asserted in one or more of the multiple state court actions or, alternatively, are somehow separate and distinct from the claims alleged in those actions, Plaintiffs present no argument as to why they were procedurally unable to assert those claims in one or more of the related state court actions or through the state court appellate process. Additionally, Plaintiffs have not convinced the Court that it has subject matter jurisdiction over this action or why it should exercise supplemental jurisdiction over Plaintiffs' state law claims. Because "*Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders[,]" *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005) (citation omitted), Plaintiffs' claims against Defendants that are the same or similar claims (or claims that could have been raised) that were dismissed in the state court actions are barred under *Rooker-Feldman* and accordingly are **DISMISSED**. *See James v. Walls*, No. 07-0842, 2007 WL 1582660, at *4 (D.N.J. May 31, 2007) (finding the court "lack[ed] jurisdiction as to any claims concerning determinations made in the state actions referenced here under the *Rooker-Feldman* doctrine, as those claims were—or could have been—raised in those state actions, from which the plaintiff

should have sought review through the state appellate process and, if warranted, *certiorari* to the United States Supreme Court"); *see also Karas*, 2009 WL 2912778, at *1, *5 (dismissing claims *with prejudice* as barred by *Rooker-Feldman* where a "New Jersey state court landlord-tenant action and the decisions made therein [we]re the very basis for the commencement of [p]laintiff's federal court action" and the claims asserted therein, noting the plaintiff presented no argument as to "why she was procedurally unable to assert her allegations of fraud and bribery in the prior state court action or through the state court appellate process").

ii.     *Younger* Abstention & *Colorado River* Abstention

Abstention from the exercise of jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny is rooted in "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  Under the *Younger* abstention doctrine, "district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010).

In 2013, the Supreme Court clarified the scope of the *Younger* doctrine, holding that abstention is appropriate in only three "exceptional" situations: (i) "state criminal prosecutions"; (ii) "civil enforcement proceedings"; and (iii) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 82 (2013); *see also In re One2One Commc'ns, LLC*, 805 F.3d 428, 440 (3d Cir. 2015) (Krause, J., concurring) ("In *Sprint* . . . the Court refused to extend the three 'exceptional' situations where *Younger* abstention is appropriate, reaffirming Chief Justice Marshall's 'early and famous[]' assertion of federal courts' obligation to hear and

decide cases within their jurisdiction." (second alteration in original)).  An example of a civil
enforcement proceeding is "a civil action in state court to abate the showing of obscene movies
which was in aid of and closely related to [the State's] criminal statutes." *Edelglass v. New Jersey*,
No. 14-0760, 2015 WL 225810, at *10 (D.N.J. Jan. 16, 2015) (alteration in original) (quoting
*Sprint*, 571 U.S. at 77–78).  "Civil proceedings in furtherance of a state court's ability to perform
judicial functions are exemplified by contempt orders." *Id.* (citing *Juidice v. Vail*, 430 U.S. 327
(1977)).  *Younger* abstention is "fully applicable" to civil state judicial proceedings "when
important state interests are involved." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432.

Relatedly, under the *Colorado River* abstention doctrine, a federal court may abstain from
hearing a case "when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire
Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colo. River Water
Conservation Dist. v. United States*, 424 U.S. 800 (1976)).  As the Third Circuit has noted,
"*Colorado River* abstention allows a court, in certain 'exceptional circumstances,' to abstain from
hearing a case to avoid piecemeal litigation." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453,
465 n.7 (3d Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.
1, 19 (1983)).  "Whether abstention is appropriate is a two-part inquiry.  The initial question is
whether there is a parallel state proceeding that raises substantially identical claims [and] nearly
identical allegations and issues." *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 307 (alteration in
original).  "*Colorado River* applies only when the parties and claims in the state suit are 'identical,'
or at least 'effectively the same' as those in the federal suit." *Malhan*, 938 F.3d at 465 n.7 (quoting
*Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017)).  Once the court determines
that proceedings are parallel, the court assesses six factors to determine whether "extraordinary
circumstances" warrant abstention: "(1) which court first assumed jurisdiction over [the] property;

(2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999). In cases involving parallel federal and state foreclosure actions, "[t]his district has repeatedly invoked *Colorado River* to abstain from hearing what amount to collateral attacks on pending state foreclosure proceedings." *Dickerson v. Wells Fargo Bank, N.A.*, No. 15-3747, 2016 WL 820989, at *3 (D.N.J. Mar. 2, 2016).

Here, as noted above, the gravamen of Plaintiffs' claims asserted in the Amended Complaint relate wholly to and are inextricably intertwined with the related state court actions that involve landlord-tenant disputes between Plaintiffs and the Palisades Defendants. Thus, under *Younger* and/or *Colorado River*, it appears clear the Court should abstain from exercising jurisdiction over this action, which is based on similar, if not identical, claims asserted against the Palisades Defendants in related pending state court actions. The factors laid out in *Spring City* weigh in favor of abstention here as the state court had jurisdiction over these claims first, piecemeal litigation should be avoided, Plaintiffs sought state court jurisdiction first, state law controls over the vast majority of Plaintiffs' claims, and the state court will adequately protect the interests of the parties. Additionally, there are important state interests involved as landlord-tenant disputes are typically heard and resolved in state court. Further, there is no indication that Plaintiffs were unable to raise the claims in their Amended Complaint in state court, that the state court could not provide adequate relief for those claims, and/or that those claims could not be litigated as a part of the ongoing state court proceedings to which they relate. *See Bauer v. Pa. State Bd. of Auctioneer Examiners*, 188 F. Supp. 3d 510, 516 (W.D. Pa. 2016).

To the extent Plaintiffs filed their Amended Complaint in this Court in an attempt to raise

other or additional claims they could have or should have asserted in their pending related state court actions and/or in an attempt to potentially obtain a different result than in their pending related state court actions, the Court declines to interfere with those pending actions and accordingly abstains from exercising jurisdiction over this action. *See Abreu v. Ochoa-Salazar*, No. 17-3109, 2017 WL 1900729, at *2 (D.N.J. May 8, 2017) ("[I]t appears that this Court should abstain from exercising jurisdiction over the Federal Action pursuant to the *Younger* abstention doctrine, because (a) the [state court] [e]viction [a]ction may be ongoing, (b) important state interests are implicated in the [e]viction [a]ction, and (c) there is an adequate opportunity to raise federal claims and the related state claims in the state court. This [c]ourt is barred from interfering with the [e]viction [a]ction if it is indeed ongoing. Furthermore, it appears that this [c]ourt is barred from adjudicating any claims in the [f]ederal [a]ction that either have been or should have been adjudicated in the [e]viction [a]ction pursuant to the well-established doctrines of res judicata and collateral estoppel." (citations omitted)). Therefore, the Court abstains from exercising jurisdiction over Plaintiffs' claims in the Amended Complaint to the extent those same claims are currently being (or could be or could have been) litigated against the Defendants in one or more related state court actions, and accordingly those claims are **DISMISSED** for lack of subject matter jurisdiction.

### iii. Plaintiffs' Remaining Claims

To the extent any federal claims remain in Plaintiffs' Amended Complaint that are not barred by *Rooker-Feldman* and/or dismissed under the *Younger* and/or *Colorado River* abstention doctrines, those claims are dismissed for failure to state a claim. Plaintiffs appear to be bringing four federal claims—alleged harassment in violation of 25 C.F.R. § 11.443 in Count One of the Amended Complaint, and alleged violations of Title III of the ADA, Title II of the Civil Rights

Act, and the FHA in Count Two of the Amended Complaint.[19] (*See* Am. Compl. at 14–20). The Court will briefly discuss each of these alleged claims in turn.

### 1. Plaintiffs' Claim for Alleged Harassment in Violation of 25 C.F.R. § 11.443

Plaintiffs' claim for alleged harassment in violation of 25 C.F.R. § 11.443 in Count One of the Amended Complaint is subject to summary dismissal. This is a federal criminal statute that does not create a private right of action. *See Walker v. Greenville Cnty. Clerk of Ct.*, No. 23-3544, 2023 WL 5516081, at *3 (D.S.C. Aug. 11, 2023), *report and recommendation adopted*, 2023 WL 5509368 (D.S.C. Aug. 25, 2023), *aff'd*, No. 23-1940, 2023 WL 8183312 (4th Cir. Nov. 27, 2023); *see also Pinckney v. U.S. Gov't*, No. 19-0939, 2019 WL 4171117, at *2 (D.S.C. June 20, 2019), *report and recommendation adopted*, 2019 WL 4168753 (D.S.C. Sept. 3, 2019). "It is also well settled that an individual cannot compel enforcement of federal or state criminal law in a federal district court." *Capogrosso v. Supreme Ct. of N.J.*, No. 07-5579, 2008 WL 11425675, at *2 n.4 (D.N.J. Aug. 6, 2008) (citing cases), *aff'd sub nom.*, *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180 (3d Cir. 2009). Plaintiffs, as private citizens, may not enforce federal criminal laws. *See id.*; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (stating "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

---

[19]    Because Plaintiffs include numerous alleged claims within individual counts of the Amended Complaint (*see, e.g.*, Am. Compl. at 17 (listing "Count Two" as "Continued Violation of 42 USC 3601, 42 USC 3604, Continued Discrimination In Housing Based Upon Race, Disability and National Origin, Continued Denial of Title II of Civil Rights Act of 1964 42 U.S.C. §2000a, Continued Violation of Public Accommodation, Continued Violation of Title III 42 USC § 12182(a), Continued Negligence")), it is difficult for the Court to decipher what specific causes of action Plaintiffs are alleging, the factual bases supporting each of those claims, and the law or laws under which they are bringing each claim. The causes of action listed herein are those that the Court can glean from the Amended Complaint. To the extent Plaintiffs intended to assert any other causes of action not listed herein, those causes of action are dismissed for failure to state a claim.

Therefore, the portion of Count One of the Amended Complaint purporting to assert a claim pursuant to 25 C.F.R. § 11.443 is subject to summary dismissal and accordingly is **DISMISSED** *with prejudice*.

### 2.    Plaintiffs' Claim for Alleged Violation of Title III of the ADA

The ADA prohibits discrimination on the basis of disability. *Affinity Healthcare Grp. Voorhees, LLC v. Twp. of Voorhees*, No. 21-0800, 2022 WL 3754832, at *9 (D.N.J. Aug. 30, 2022). The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations." *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 164 (3d Cir. 2006). To state a claim for disability discrimination under Title III of the ADA, "a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor, or operator." *Whichard v. Valley Forge Casino Resort*, No. 22-3597, 2024 WL 1704980, at *4 (E.D. Pa. Apr. 18, 2024). To state a public-accommodation claim under the ADA, the "plaintiff must show that (1) he is disabled, (2) the complained-of venue is a 'public accommodation' under Title III of the ADA, and (3) the venue unlawfully discriminated against the plaintiff on the basis of his disability by failing to make a reasonable modification that was necessary to accommodate his disability." *Herrera v. Nike, Inc.*, No. 23-2947, 2024 WL 3159295, at *2 (D.N.J. June 25, 2024) (citing *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d

Cir. 2019)). Claims of discrimination based on disability under the ADA may proceed under any or all of the following three theories of liability: (i) disparate treatment or intentional discrimination; (ii) disparate impact; and (iii) failure to make reasonable accommodation. *See Allentown Victory Church v. City of Allentown*, No. 21-3021, 2022 WL 4071851, at *4 (E.D. Pa. Sept. 1, 2022); *W. Easton Two, LP v. Borough Council of W. Easton*, 489 F. Supp. 3d 333, 362 (E.D. Pa. 2020); *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).

Here, while difficult to glean from the allegations in the Amended Complaint, it appears Plaintiffs are alleging a Title III ADA violation under the disparate treatment/intentional discrimination and/or "failure to make reasonable accommodation" theories. (*See* Am. Compl. at 17–20 (Count Two)). Plaintiffs fail to state a claim under either theory. Plaintiffs allege in a conclusory fashion that from prior to and continuing through September 2023 to the date the Amended Complaint was filed, the Palisades Defendants "have refused to accommodate [plaintiff] Angel Lopez by refusing to remove the mold being caused by water leaks that is worsening [his] Asthma and COPD and reducing his quality of life" and "have been discriminating and retaliating against [P]laintiffs by refusing to repair the water leaks and refus[ing] to remediate the mold from [P]laintiffs' apartment[.]" (*Id.* at 19, ¶¶ 14–15). Plaintiffs further allege they "enjoy no peace at their tenancy and are being denied the right to full and equal enjoyment of the services, privileges and advantages allowed to all tenants due to his race and national origin, Angel Lopez's disability and because they grieved about their uninhabitable unlivable rental apartment." (*Id.* at 14, ¶ 68). Plaintiffs also allege the Palisades Defendants failed to make the repairs to their Apartment based on Plaintiffs' "race [and] national [o]rigin and Angel Lopez's disability, retaliation for grieving [that] amounts to a denial of public accommodation" and that Plaintiffs continue "to be denied of Angel Lopez [*sic*] rights under Title III of the [ADA]." (*See id.* at 19–20, ¶¶ 16–17). However,

outside of these and other conclusory allegations, Plaintiffs do not allege what disability or disabilities they have that entitle them to accommodations under the ADA, whether the Palisades Defendants knew about their disabilities, nor how the Palisades Defendants purportedly denied their requests for accommodations. Additionally, Plaintiffs do not sufficiently allege how they were discriminated against on the basis of a disability "in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation[.]" *See Whichard*, 2024 WL 1704980, at *4. Nor do Plaintiffs allege how the Complex and/or their Apartment constitutes a place of "public accommodation" as that term is defined in the statute. *See* 42 U.S.C. § 12181(7). Further, to the extent Plaintiffs are alleging the Palisades Defendants discriminated against them based on their disabilities, they do not adequately allege facts to support a claim for discrimination sufficient to survive a motion to dismiss—for example, they do not allege how or when the Palisades Defendants allegedly discriminated against them, nor how allegedly refusing to fix water leaks and mold growth constitutes discrimination on the basis of disability in violation of the ADA.

Therefore, the portion of Count Two of the Amended Complaint alleging a violation of Title III of the ADA is **DISMISSED** *without prejudice*.

### 3.    Plaintiffs' Claim for Alleged Violation of the FHA

"The FHA prohibits discrimination based on 'race, color, religion, sex, familial status, or national origin' in various real estate-related transactions." *Butler v. Sundo Cap., LLC*, 559 F. Supp. 3d 452, 456 (W.D. Pa. 2021) (quoting 42 U.S.C. § 3604). A plaintiff can "state a claim under the FHA by alleging either that a defendant discriminated intentionally or that a defendant's actions had a discriminatory effect." *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289–90 (E.D. Pa. 2020). Similar to the ADA, a plaintiff may state a claim for a violation of the FHA under

one of three theories: (i) disparate treatment, or intentional discrimination; (ii) disparate impact; or (iii) failure to make a reasonable accommodation. *See Cmty. Servs., Inc.*, 421 F.3d at 176. "In order to state a claim for failure to make a reasonable accommodation, a plaintiff must show that 'the accommodations that it requested are necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling.'" *Spieth v. Bucks Cnty. Hous. Auth.*, 594 F. Supp. 2d 584, 593 (E.D. Pa. 2009) (quoting *Lapid–Laurel, L.L.C. v. Zoning Bd. of Adjustment of Scotch*, 284 F.3d 442, 459 (3d Cir. 2002)).

Here, Plaintiffs have failed to sufficiently state a claim under the FHA—whether under a theory of disparate treatment/intentional discrimination or a theory of "failure to make a reasonable accommodation." Their conclusory allegations attempting to state a claim under the FHA suffer the same deficiencies as Plaintiffs' allegations attempting to state a claim under the ADA. Plaintiffs allege in a conclusory fashion that the Palisades Defendants "have been discriminating and retaliating against [them] by refusing to repair the water leaks and refus[ing] to remediate the mold" in their Apartment, "thereby discriminating against them in their full and equal enjoyment of the goods, services, facilities, privileges, advantages, to fair housing and denying them their rights to public accommodation"; that the Palisades Defendants' ongoing "failure to make the repairs is based on [P]laintiffs race [and/or] national [o]rigin and Angel Lopez's disability, retaliation for grieving [that] amounts to a denial of public accommodation"; and that Plaintiffs "continue[] to be denied their rights to proper [h]ousing under the [FHA.]" (*See* Am. Compl. at 19–20, ¶¶ 15–17). It is not clear what Plaintiffs mean by "rights to proper housing" but in any event, Plaintiffs do not adequately state a claim under the FHA because they do not sufficiently allege that the Palisades Defendants "discriminated intentionally" against them based on race or national origin (and if so, how and when this discrimination occurred), nor do Plaintiffs allege that

the Palisades Defendants' actions had a discriminatory effect (and if so, what effect).  *See El*, 438 F. Supp. 3d at 289–90.  Thus, Plaintiffs do not adequately allege facts to support a claim for discrimination based on race and/or national origin sufficient to survive a motion to dismiss—for example, they do not allege how or when the Palisades Defendants allegedly discriminated against them, nor how allegedly refusing to fix water leaks and mold growth constitutes discrimination on the basis of race and/or national origin in violation of the FHA.[20]

Therefore, the portion of Count Two of the Amended Complaint alleging a violation of the FHA is likewise **DISMISSED** *without prejudice*.

### 4. Plaintiffs' Claim for Alleged Violation of Title II of the Civil Rights Act

Title II of the Civil Rights Act of 1964 prevents discrimination by places of public accommodation.  *See* 42 U.S.C. § 2000a(a); *Jabri v. Gonzalez*, No. 22-7448, 2024 WL 4719492, at *8 (D.N.J. Nov. 7, 2024).  It provides: "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  *Jabri*, 2024 WL 4719492, at *8 (alterations in original) (quoting 42 U.S.C. § 2000a); *see also Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 247 (1964).

> A Title II claim requires a plaintiff to demonstrate that he or she "(1) is a member of a protected class; (2) attempted to contract for services and afford himself [or herself] the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyment of a public accommodation; and (4) such

---

[20] Lopez is Puerto Rican and Koizumi is Japanese.  (Am. Compl. at 6, ¶ 1).  Plaintiffs' sole non-conclusory allegation in the Amended Complaint referencing race and/or national origin is an allegation stating: "The landlord [Pec] has expressed that plaintiff Lopez is worthless because he is disabled, and that Puerto Rican [*sic*] use horse drugs and that he is happy that he is Polish."  (*Id.* at 7, ¶ 7).  While this statement is admittedly offensive and distasteful, it does not show or state a claim for discrimination in violation of the FHA.

36

> services were available to similarly situated persons outside [his or]
> her protected class who received full benefits or were treated better."

*Jabri*, 2024 WL 4719492, at *8 (alterations in original) (quoting *Anderson v. J.P. Morgan Chase Bank*, No. 22-5084, 2024 WL 1363468, at *4 (E.D. Pa. Mar. 29, 2024)). The sole remedy available under Title II is a civil action for preventive relief, such as an injunction. *See Livingstone v. Hugo Boss Store, Atl. City*, No. 21-1971, 2021 WL 3910149, at *5 (D.N.J. Sept. 1, 2021) (citing *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004)). "Additionally, before bringing a claim under Title II, a plaintiff, pursuant to Section 2000a-3(c), must first notify a state or local government entity authorized to grant relief from the alleged discrimination or to institute criminal proceedings." *Jabri*, 2024 WL 4719492, at *8 (citing 42 U.S.C. § 2000a-3(c)). "No civil action may be brought under Title II before thirty days after written notice of the matter to the appropriate state or local entity." *Livingstone*, 2021 WL 3910149, at *5 (citing 42 U.S.C. § 2000a-3(c)). "Compliance with Section 2000a-3(c) is a ***mandatory jurisdictional prerequisite*** and 'a Title II plaintiff must demonstrate that he or she has satisfied the notice requirement before a federal court has subject matter jurisdiction to hear the plaintiff's claim.'" *Waiters v. Republic Bank*, No. 24-5728, 2024 WL 1928331, at *2 (D.N.J. May 2, 2024) (emphasis added) (quoting *Livingstone*, 2021 WL 3910149, at *5).

Here, Plaintiffs have not showed they satisfied the notice requirement necessary to bring a claim under Title II of the Civil Rights Act, and thus have failed to show this Court has subject matter jurisdiction over this claim. Further, even if Plaintiff had showed they satisfied the notice requirement, they fail to state a claim under Title II because among other things, they do not sufficiently allege facts showing they were discriminated against on the basis of race and/or national origin[21] or that they were denied the full benefits or enjoyment of a public accommodation

---

[21]    *See supra* n.20.

that were available to similarly situated persons outside of their protected class.  *See Jabri*, 2024 WL 4719492, at *8.  Additionally, Plaintiffs do not allege that or how the Complex or the Apartment constitute a "place of public accommodation" as that term is defined in the statute, *see* 42 U.S.C. § 2000a(b).

Therefore, the portion of Count Two of the Amended Complaint alleging a violation of Title II of the Civil Rights Act is also **DISMISSED** *without prejudice*.

### iv.    Plaintiffs' Request for Declaratory and Injunctive Relief

Plaintiffs' request for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 *et seq.* and Federal Rule of Civil Procedure 57 in Count Three of the Amended Complaint also fails. "[I]njunctive relief is 'an extraordinary remedy . . .' which should be granted only in limited circumstances."  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994) (second alteration in original).  Further, injunctive relief is just a remedy; it is not a claim upon which relief can be granted.  *See Funa v. Pepperidge Farm, Inc.*, No. 07-1743, 2011 WL 891242, at *4 (W.D. Pa. Mar. 11, 2011) ("Because a request for injunctive relief is just that—a request for relief—it is not a claim upon which relief can be granted and need not be considered here.").  Accordingly, Plaintiffs cannot sustain an independent claim for injunctive relief.

To the extent Plaintiffs are seeking injunctive relief based upon the other counts in the Amended Complaint, the Court denies such relief.  For a court to grant injunctive relief, a party must demonstrate: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  Here, Plaintiffs have failed to establish likelihood

of success on the merits, nor have Plaintiffs addressed, let alone established, the remaining prongs warranting injunctive relief, apart from generally stating they will suffer irreparable harm absent injunctive relief.  This is insufficient to show an injunction is necessary or warranted at this time. The Court also finds Plaintiffs' request for declaratory relief is premature.

Accordingly, Plaintiffs' claim for declaratory and injunctive relief in Count Three of the Amended Complaint is **DISMISSED** *without prejudice* for failure to state a claim.  Having dismissed all federal claims asserted in the Amended Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims arising under state law.  28 U.S.C. § 1367(c)(3); *Yu v. McGrath*, 597 F. App'x 62, 68 (3d Cir. 2014) ("[P]endent jurisdiction is a doctrine of discretion, not a plaintiff's right."); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("This Court has recognized that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995))).  Accordingly, to the extent not already dismissed above, Plaintiffs' remaining state law claims in the Amended Complaint are **DISMISSED** *without prejudice* for lack of subject matter jurisdiction.

## IV.    CONCLUSION

Based on the foregoing, the Broderick Defendants' motion to dismiss Plaintiffs' Amended Complaint (D.E. No. 21) is **GRANTED**, and the Palisades Defendants' motion to dismiss Plaintiffs' Amended Complaint (D.E. No. 23) is also **GRANTED**, and accordingly Counts One through Eight of the Amended Complaint (D.E. No. 5) are **DISMISSED** *without prejudice*[22] for

---

[22]    However, for the reasons set forth in Section III.B.iii.1, the portion of Count One purporting to assert a claim for harassment in violation of 25 C.F.R. § 11.443 is **DISMISSED** *with prejudice*.

lack of subject matter jurisdiction and/or failure to state a claim, and Count Nine of the Amended

Complaint (D.E. No. 5) is **DISMISSED** *with prejudice* for failure to state a claim.  An appropriate

Order was filed on December 31, 2024 (*see* D.E. No. 39).


**Dated:** January 3, 2025                                   *s/ Esther Salas*
                                                            **Esther Salas, U.S.D.J.**