**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ANGEL LOPEZ and KAZUE KOIZUMI,** | |
| **Plaintiffs,** | **Civil Action No.: 23-23012 (ES) (CF)** |
| **v.** | **OPINION** |
| **EDWARD PEC, _et al._,** | |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

Before the Court are two motions to dismiss plaintiffs Angel Lopez and Kazue Koizumi's (together, "Plaintiffs") Second Amended Complaint, (D.E. No. 41 ("Second Amended Complaint" or "SAC")): (i) defendants "Brandon J. Broderick, Attorney at Law," "Brandon J. Broderick, LLC," and Christopher Karounos, Esq.'s (together, the "Broderick Defendants") motion to dismiss, (D.E. No. 46 ("Broderick Motion" or "Broderick Mot."); D.E. No. 46-1 ("Broderick Mov. Br.")); and (ii) defendants Edward Pec and The Palisades, LLC's (together, the "Palisades Defendants," and collectively with the Broderick Defendants, "Defendants") motion to dismiss, (D.E. No. 47 ("Palisades Motion" or "Palisades Mot."); D.E. No. 47-1 ("Palisades Mov. Br.")).[1] Plaintiffs filed a joint opposition to both motions, (_see_ D.E. No. 48 ("Opposition Brief" or "Opp. Br.")), and the Broderick Defendants and the Palisades Defendants filed their respective replies, (D.E. Nos. 49 ("Broderick Reply Br.") & 50 ("Palisades Reply Br.")). Having considered the parties' submissions in connection with the two motions, the Court decides these motions without

---

[1]    While Docket Entry Number 47 was also docketed as a "motion for certificate of appealability," nothing in the corresponding papers, including the proposed order, requests as much. Accordingly, the Court construes the docket text as a typographical error and will not rule on this topic.

oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the foregoing reasons, the Broderick Motion, (D.E. No. 46), is **GRANTED**, and the Palisades Motion, (D.E. No. 47), is **GRANTED**.

## I.     BACKGROUND

### A.     Factual Background[2]

Plaintiffs are married and live in Bergen County, New Jersey, where they lease an apartment in a multi-unit complex (the "Complex") located in Palisades Park, New Jersey.  (SAC at 3–4, ¶¶ 1–2; *id.* at 6, ¶ 1).[3]  The Palisades Defendants include The Palisades LLC (a limited liability corporation which "owned, designed, constructed, and developed" the Complex), and Edward Pec (the Plaintiffs' landlord and owner of The Palisades LLC).  (SAC at 4, ¶¶ 4–6).  The Broderick Defendants include Brandon J. Broderick, LLC and Brandon J. Broderick, Attorney at Law[4], and Christopher Karounous, Esq. (the attorney for the Palisades Defendants, operating under the "authority of Brandon J. Broderick, Attorney at [L]aw or Brandon J. Broderick, LLC").  (SAC at 4–5, ¶¶ 7 &11).

#### i.     Facts Related to the Palisades Defendants

Plaintiffs allege that The Palisades LLC converted the basement of the Complex into an "extra living space" and rented it out to them as an apartment (hereafter, the "Apartment").  (SAC

---

[2]     The factual background is taken from the allegations in the Second Amended Complaint.  For purposes of the instant motions, the Court accepts the factual allegations in the Second Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3]     Because the paragraphs in the Second Amended Complaint are not consecutively numbered, the Court cites to both the page and paragraph numbers where necessary.

[4]     In its January 3, 2025 opinion granting Defendants' prior motions to dismiss the Amended Complaint, this Court remarked: "It is unclear from the Amended Complaint what, if any, distinction exists between defendant 'Brandon J. Broderick, LLC' and defendant 'Brandon J. Broderick, Attorney at Law.'"  (D.E. No. 40 ("Opinion" or "Op.") at 2 n.3).  The relationship between those two Defendants remains unclear in Plaintiffs' Second Amended Complaint.  (*See* SAC at 3–6, ¶¶ 1–21).

at 7, ¶¶ 1–2).  According to Plaintiffs, the Apartment is "structurally defective" and "water leaks from every place including through cracks in the walls and from the ceiling."  (*Id*. ¶ 2).  These issues make the Apartment "permanently wet, unlivable, and uninhabitable" and have led Plaintiff Lopez "to develop Asthma and Severe COPD."  (*Id*. ¶ 1).  Plaintiffs allege that their "bedroom and bathroom walls are coated with mold of various species," and that "their living space is perpetually damp and humid." (*Id*. ¶ 5).  Plaintiffs further claim that "when the tenants above [their] apartment use their sinks or flush their toilets, dark colored and yellow tinged water stream[s] down [P]laintiffs' walls or floods through their ceiling into their bedroom and bathroom upon" them. (*Id*. ¶ 4).  Additionally, Plaintiffs claim that the electrical wiring in the Apartment "is faulty and the wires exist in a wet environment placing the [P]laintiffs at risk for electrocution and death." (*Id*. ¶ 6).

Beginning in September of 2023 and continuing through the date they filed their Second Amended Complaint, Defendant Pec—Plaintiffs' landlord—has "refuse[d] to repair water leaks that continue to cause mold to grow in their [A]partment that adversely affects their health and has worsened Angel Lopez's Asthma and COPD."  (*Id*. at 10, ¶ 32).[5]  Further still, Plaintiffs allege that, "[i]n order to harass, seriously annoy and make Plaintiff Lopez uncomfortable and force his eviction, Landlord Edward Pec has CONTINUED to stalk and harass [P]laintiff Lopez and his family continuing through September 2023 to present."  (*Id*. ¶ 31; *see also Id*. at 10–13).  Plaintiffs

---

[5]    Plaintiffs do not define "COPD" in either their Amended Complaint or Second Amended Complaint. However, the Court interprets it to mean "Chronic Obstructive Pulmonary Disease."  Plaintiff Lopez maintains that he is disabled from sleep apnea, PTSD, depression, anxiety, spinal problems, COPD and asthma that he contracted from "the continuing water leaks and excessive mold growth" in his Apartment.  (SAC at 2, ¶¶ 3–5).

also state that they originally filed their complaints against Defendants in the New Jersey Superior Court.  (*Id*. at 7, ¶ 8).[6]

### ii.    Facts Related to the Broderick Defendants

Plaintiffs allege the Broderick Defendants invaded Plaintiff Koizumi's privacy by allowing one of their staff members to eavesdrop and/or record certain privileged conversations between Koizumi and her attorney, and by asking Koizumi about those communications during her deposition in one of the related state court actions.  (*See* SAC at 8–9, ¶¶ 10–27).  Specifically, on September 15, 2023, Defendant Karounos asked Plaintiff Koizumi "to state whether her attorney made certain privileged statements to her moments before the deposition started."  (*Id*. at 8, ¶ 10).  Karounos indicated that fictitious defendant "[Brandon J. Broderick] Staff Doe" was near where Koizumi and her attorney were standing before Koizumi's deposition, and overheard Koizumi's attorney make various statements to her.  (*Id*. ¶ 12).  During Koizumi's deposition, Karounos allegedly repeated Koizumi's "attorney's private communications to her verbatim," even though those communications were only made to her in the context of an attorney-client relationship.  (*Id*. ¶ 14).  Koizumi did not disclose the privileged statements her attorney made to her.  (*Id*. at 9, ¶ 21).  According to Plaintiffs, Karounos pressed Koizumi in a coercive manner to answer him during her deposition and described "Koizumi's refusal to provide him with answers [] he desired related to privileged communications as 'perjury.'"  (*Id*. ¶¶ 22–23).  "Koizumi became overwhelmed, distraught and anxious at the deposition which progressed into complaints of chest

---

[6]    Although Plaintiffs attached some state court orders and state court transcripts to their Second Amended Complaint, they again failed to list the docket numbers for any of their related state court actions, nor did they attach any of the related pleadings as exhibits to the Second Amended Complaint or their opposition to Defendants' motions to dismiss.  (*See generally* SAC; Opp. Br.; *see also* Op. at 4 n.5).  However, consistent with this Court's January 3, 2025 Opinion, and as noted below, the Court will consider all state court filings provided by Plaintiffs as well as "the filings from Plaintiffs' related state court actions attached to the Palisades Defendants' Motion as 'matters incorporated by reference or integral to [Plaintiffs'] claim[s]' in the [Second] Amended Complaint, 'items subject to judicial notice,' and/or 'matters of public record.'" (*See* Op. at 12).

pain, which defense counsel suggested warranted that the remainder of [her] deposition be adjourned for the day." (*Id.* ¶ 24).

### B.    Procedural History

On December 11, 2023, Plaintiffs initiated this action by filing the Complaint against Defendants and fictitious defendants "Brandon J. Broderick Staff Doe," "John Doe 1-10," "Jane Doe 1-10," "Company Doe 1-5," and "XYZ Corporation 1-10" (together, the "Fictitious Defendants"), alleging various state and federal law claims including discrimination, denial of public accommodation, harassment, invasion/violation of privacy, and intentional infliction of emotional distress. (*See generally* D.E. No. 1). On December 30, 2023, Plaintiffs filed an Amended Complaint against Defendants and the Fictitious Defendants alleging nine causes of action (five against the Palisades Defendants, and four against the Broderick Defendants). (*See generally* D.E. No. 5 ("Amended Complaint" or "Am. Compl.")).[7] On March 22, 2024, Defendants filed their respective motions to dismiss Plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. Nos. 21 & 23). On January 3, 2025, after the motions were fully briefed, this Court issued an Opinion granting the Defendants' motions

---

[7]        (*See, e.g.*, Op. at 5–6 & n.7 (parsing out the alleged causes of action as follows: (i) "Harassment 25 CFR 11.443, Stalking/Cyber Stalking NJSA 2C:12-10, NJSA 2C:33-4, NJSA2C:20-3A, Continued Violation of Privacy (Edward Pec, The Palisades LLC, John Doe 1-5, Jane Doe 1-5)" (Count One); (ii) "Continued Violation of 42 USC 3601, 42 USC 3604, Continued Discrimination In Housing Based Upon Race, Disability and National Origin, Continued Denial of Title II of Civil Rights Act of 1964 42 U.S.C. §2000a, Continued Violation of Public Accommodation, Continued Violation of Title III 42 USC § 12182(a), Continued Negligence (Edward Pec, The Palisades LLC, John Doe 1-5, Jane Doe 1-5, XYZ Corp., Company Doe 1-5)" (Count Two); (iii) "28 USC 2201 et seq., FRCP 57 Declaratory Judg[]ment and Emergency Restraint and Injunctive Relief (The Palisades, LLC, Edward Pec)" (Count Three); (iv) "Continued Tort of Reckless, Intentional, Infliction of Severe Emotional Distress (Edward Pec, The Palisades, LLC, John Doe 1-5, Jane Doe 1-5)" (Count Four); (v) "Continued Denial of Public Accommodation Under NJSA10:1-2; NJSA10:5-4; NJSA10:5-12(d)(e)(f) (Edward Pec, The Palisades LLC)" (Count Five); (vi) "Invasion of Privacy (Violation of Attorney Client Privilege), Reckless, Intentional Infliction of Severe Emotional Distress (Christopher Karounos, Esquire, Brandon J. Broderick, Attorney At Law, Brandon J. Broderick, LLC, BBK Staff Doe)" (Count Six); (vii) "Place of Public Accommodation, NJSAl0:1-2: NJSA 10:5-4; NJSA 10:5-12(d)(e)(f), New Jersey Constitution Art 1 Para 1, 5, 18, Ptasynski v Ehiri Uwaneme, 371 N.J.Super 333 (App. Div. 2004) (Christopher Karounos, Esquire, Brandon J. Broderick, Attorney At Law, Brandon J. Broderick, LLC, BBK Staff Doe)" (Count Seven); (viii) "Class Action" (Count Eight); (ix) "Punitive Damages" (Count Nine)); *see also* Am. Compl. at 14–34)).

to dismiss in full.  (*See* Op. at 39–40).  In short, this Court dismissed Counts One through Eight of the Amended Complaint *without prejudice* for lack of subject matter jurisdiction and/or failure to state a claim, and dismissed Count Nine *with prejudice* for failure to state a claim.  (*Id.*).[8]

 **_Claims against the Palisades Defendants_**.  The Court held that, "to the extent Plaintiffs assert the same or similar claims against Defendants in their Amended Complaint in this Court as they asserted (or could have asserted) against Defendants in their state court actions," those claims were dismissed "for lack of subject matter jurisdiction . . . and barred by the *Rooker-Feldman* doctrine."  (*Id.* at 25).  The Court further held that "the gravamen of Plaintiffs' claims in the instant action relate[d] wholly to and [were] inextricably intertwined with the pending state court actions involving the same or similar claims related to the landlord-tenant disputes between Plaintiffs and the Palisades Defendants."  (*Id.*).[9]  Accordingly, "under *Younger* and/or *Colorado River*, it appear[ed] clear the Court should abstain from exercising jurisdiction over this action, which is based on similar, if not identical, claims asserted against the Palisades Defendants in related pending state court actions."  (*Id.* at 29).  Finally, "[t]o the extent any federal claims remain[ed] in Plaintiffs' Amended Complaint that [were] not barred by *Rooker-Feldman* and/or dismissed under the *Younger* and/or *Colorado River* abstention doctrines," the Court dismissed those claims for failure to state a claim.  (*Id.* at 30–31).  Plaintiffs appeared to bring four such federal claims:

---

[8] This Court also dismissed a purported claim for harassment in violation of 25 C.F.R. § 11.443 in Count One *with prejudice*.  (*See* Op. at 39 n. 22).

[9] This Court held previously: "The Civil Case Information Statement Plaintiffs submitted to the New Jersey Appellate Division for Lopez's appeal of the state court matter dismissed with prejudice reflects in relevant part that 'On October 7, 2020, Plaintiff Lopez had filed a lawsuit in the Bergen County Superior Court after he developed Asthma and Severe COPD in his rental apartment from Mold caused by his landlord's refusal to repair the severe water leaks that causes severe mold growth all over the apartment' and that Lopez 'is a Disabled American who is being denied' disability and public accommodations . . . . These claims are nearly identical to the claims Plaintiffs assert in the Amended Complaint.  Thus, all of Plaintiffs' claims in the Amended Complaint that are the subject of the matter pending before the New Jersey Appellate Division are dismissed as not properly before this Court and/or barred by the Rooker-Feldman doctrine.  To the extent Koizumi contends the *Rooker-Feldman* doctrine does not apply to her claims in the Amended Complaint, her claims are separately dismissed for lack of subject matter jurisdiction and/or failure to state a claim, as discussed herein."  (*See* Op. at 25 n.18).

alleged harassment in violation of 25 C.F.R. § 11.443 in Count One of the Amended Complaint, and alleged violations of Title III of the Americans with Disabilities Act ("ADA"), Title II of the Civil Rights Act, and the Fair Housing Act ("FHA") in Count Two of the Amended Complaint. (*See* Am. Compl. at 14–20; *see also* Op. at 30–31). The Court dismissed *with prejudice* Plaintiffs' claim for alleged harassment in violation of 25 C.F.E. § 11.443 in Count One of the Amended Complaint; dismissed *without prejudice* the portions of Count Two alleging violations of Title III of the ADA, the FHA, and Title II of the Civil Rights Act; and dismissed *without prejudice* Plaintiffs' claim for declaratory and injunctive relief in Count Three. (Op. at 30–39). Further, to the extent not already dismissed, the Court dismissed Plaintiffs' remaining state law claims, *without prejudice*, for lack of subject matter jurisdiction. (*Id*. at 39).

*Claims against the Broderick Defendants.* The Court dismissed Counts Six and Seven *without prejudice* for lack of subject matter jurisdiction: the Court declined "to exercise supplemental jurisdiction over the purely state law claims." (*Id*. at 17). The Court further dismissed Count Eight *without prejudice* for failure to state a claim, as Plaintiffs did not "cite to . . . any case law stating a plaintiff can bring a class action as an independent cause of action in a complaint in federal court." (*Id*. at 18). Finally, the Court dismissed Count Nine *with prejudice*, as Plaintiffs improperly asserted a standalone claim for punitive damages. (*Id*. at 19).

*Plaintiffs' Second Amended Complaint*. On February 3, 2025, Plaintiffs filed the Second Amended Complaint with a jury demand against all Defendants, alleging eight causes of action. (*See generally* SAC).[10] Although Plaintiffs no longer seek relief for the claims that this Court

---

[10] The day after Plaintiffs filed the Second Amended Complaint, they submitted correspondence with declarations and various exhibits in support of their amended pleading. (*See generally* D.E. Nos. 42 & 43). Plaintiffs noted that they had "technical difficulties" in uploading the Second Amended Complaint and so filed the exhibits separately. (D.E. No. 42).

previously dismissed *with prejudice*, they otherwise seek the same relief as in their Amended Complaint.  (*Compare* Am. Compl. at 34–35, *with* SAC at 39, ¶¶ 1–5).

On March 3, 2025, the Broderick Defendants filed a motion to dismiss Plaintiffs' Second Amended Complaint; on March 7, 2025, the Palisades Defendants filed the same.  (*See generally* Broderick Mot. & Palisades Mot.).  On March 24, 2025, Plaintiffs filed a brief in opposition to both motions.  (*See generally* Opp. Br.).  On March 31, 2025, the Broderick Defendants filed a reply; on April 1, 2025, the Palisades Defendants filed the same.  (*See generally* Broderick Reply Br. & Palisades Reply Br.).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)—Lack of Subject Matter Jurisdiction

As this Court previously explained, federal courts have limited jurisdiction and can adjudicate cases and controversies only as permitted under Article III of the Constitution.  *See* U.S. Const. Art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322–23 (3d Cir. 1998) ("The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief.").  Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction.  *See Ridge*, 150 F.3d at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).  The party seeking to invoke federal jurisdiction has the burden of establishing subject matter jurisdiction.  *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  Under Federal Rule of Civil Procedure 12, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court ***must*** dismiss the action."  Fed. R. Civ. P. 12(h)(3) (emphasis added).

"Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016).  Moreover, "[w]hen a motion

under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).[11]

### B. Rule 12(b)(6)—Failure to State a Claim

To survive dismissal under Rule 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Further, a complaint may be considered frivolous where it relies on an "'indisputably meritless legal theory' or a

---

[11]    A motion to dismiss under Rule 12(b)(1) "attacks [ ] the right of a plaintiff to be heard in [f]ederal court." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. Jan. 11, 1999). In deciding a 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed." *Leadbeater v. JPMorgan Chase, N.A.*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." *Id.* (citing *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A facial challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law," or because there is no diversity of citizenship among the parties, or because there is some other jurisdictional defect. *Aichele*, 757 F.3d at 358. In its previous Opinion, the Court held that "Defendants' attack appears to be facial," and so only considered "the allegations in the Amended Complaint and the documents incorporated by reference or integral to Plaintiffs' claims therein, as discussed more fully below, in determining whether it has subject matter jurisdiction over Plaintiffs' claims." (Op. at 9 (citing D.E. No. 21 at 4)). The Court does the same in reviewing the Defendants' present motions to dismiss. (*See* Broderick Mov. Br. at 6).

'clearly baseless' or 'fantastic or delusional' factual scenario." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).[12]

## III.    DISCUSSION

The Court begins by considering documents attached and extraneous to the pleadings, as it did previously.  (*See* Op. at 11–13).  Here, Plaintiffs submitted a letter with various exhibits, totaling nearly 150 pages combined, in support of their Second Amended Complaint.  (*See generally* D.E. No. 42).   Plaintiffs also submitted a separate "Confidential Appendix of Documents" containing sixty additional pages of exhibits.  (*See generally* D.E. No. 43).   In addition, Plaintiffs attached several extraneous exhibits to their brief in opposition to Defendants' motions to dismiss.  (*See generally* D.E. No. 48).   Separately, and as with their prior motion, the Palisades Defendants attached as exhibits to their present motion certain filings from Plaintiffs' related state court actions.  (*See* D.E. No. 47-2).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *Burlington Coat Factory*, 114 F.3d at 1426 (citation omitted).  Rather, "[i]n deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing cases); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) ("Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss").  However, "a court may consider 'an undisputedly authentic document that

---

[12]    As discussed herein and in this Court's previous Opinion, (*see* Op. at 10), while the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (citation modified).

Thus, in ruling on Defendants' motions to dismiss and determining whether this Court has subject matter jurisdiction over this action, the Court will consider—as it did previously—the facts alleged in Plaintiffs' Second Amended Complaint, and the filings from Plaintiffs' related state court actions attached to the Palisades Defendants' motion as "matters incorporated by reference or integral to [Plaintiffs'] claim[s]" in the Second Amended Complaint, "items subject to judicial notice," and/or "matters of public record." *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation modified) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). The Court is further constrained to consider the exhibits attached to the Second Amended Complaint, (*see* D.E. Nos. 42 & 43), although it again notes that many of these exhibits appear to relate to Plaintiffs' state law claims over which this Court lacks subject matter jurisdiction, (*see* Op. at 13).[13]

Furthermore, the Court is constrained to consider the documents attached to Plaintiffs' Opposition Brief as documents of public record.[14] *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice &*

---

[13]    However, the Court will not consider the affidavit submitted by Plaintiff Angel Lopez and attached to the Second Amended Complaint as "Exhibit 7." (*See* D.E. No. 42-3); *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989) ("We do not believe that an affidavit is a 'written instrument' as that term is used in [Federal Rule of Civil Procedure] 10(c). To hold otherwise would elevate form over substance by drawing a distinction between an affidavit filed with an answer and an affidavit filed with a motion to dismiss under Rule 12(b)(6). In addition, this would further blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted."); *Moore v. Bank of Am., NA*, No. 18-13727, 2019 WL 2281599, at *1 (D.N.J. May 28, 2019) (declining to consider "a sworn narrative in numbered paragraphs in which Plaintiff explains her version of the facts" which plaintiff attached to her complaint, because "[t]he Third Circuit has held that affidavits attached to a pleading are not the sort of 'written instruments' contemplated by Rule 10(c), and should not be considered on a motion to dismiss." (quoting *Rose*, 871 F.2d at 340)).

[14]    Because Plaintiffs did not clearly label these documents, the Court refers to them using descriptions of their contents and their docket entry numbers.

*Procedure* § 1357 (3d ed. 2004)) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). The Court will accordingly consider the November 3, 2023 transcript from a motion hearing in state court, (*see* D.E. No. 48-7), and the December 1, 2023 transcript from a separate motion hearing in state court, (*see* D.E. No. 48-8), as documents of public record. *See Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018) ("Public records include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, judicial opinions, and hearing transcripts."). Similarly, the Court will consider state court orders dated December 8, 2023 and March 30, 2023, as well as certifications and publicly-filed correspondence from Plaintiff's state court matters for the reasons described above. (*See* D.E. Nos. 48-2, 48-3, 48-4, 48-5 & 48-6); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) ("When presented with a motion to dismiss, this Court 'is permitted to take judicial notice of matters of public record,' including 'the fact of such litigation and related filings.'" (citation modified) (first citing *Clarry v. United States,* 891 F.Supp. 105, 109 (E.D.N.Y.1995), *aff'd,* 85 F.3d 1041 (2d Cir.1996); then quoting *City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273, 1279 (E.D.N.Y.1995)).

The Court notes however, that, although it may take judicial notice of public records when deciding a motion to dismiss, it may do so "'only to establish their existence and legal effect, or to determine what statements [they] contained . . . *not for the truth of the matters asserted.*'" *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. March 31, 2014) (quoting *Liang v. City of New York*, No. 10-0089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013), *aff'd sub nom. Liang v. Zee*, 764 F. App'x 103 (2d Cir. 2019)); *see also Elmo v. Woodbridge Bd. of Educ.*, No. 20-6703,

2021 WL 5822786, at *2 (D.N.J. Dec. 7, 2021) ("In deciding a Rule 12(b)(6) motion, a court ordinarily considers only the factual allegations, exhibits attached to the complaint, and matters of public record.  Judicial proceedings are matters of public record.  A court may also 'take judicial notice of another court's opinion—not for the truth of the matter asserted, but for the existence of the opinion.'" (citation modified) (first citing *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004); then citing *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); and then quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).[15]  Moreover, the Court notes that Plaintiffs did not clearly label these documents, making it difficult in many instances for the Court to discern their relevance and applicability to the facts alleged in the Second Amended Complaint.

### A.    The Palisades Defendants' Motions to Dismiss

Plaintiffs' Second Amended Complaint asserts five claims against the Palisades Defendants,[16] which the Palisades Defendants vigorously defend against.  They argue that "this action is yet another regurgitation of Plaintiffs' specious claims in the Bergen and Passaic County Superior Courts," (Palisades Mov. Br. at 2), and that "Plaintiffs continue to have a documented history of slinging baseless accusations against Defendants and defense counsel for holding Plaintiffs' to their proofs, and filing actions against Judges and the Superior Court itself when they

---

[15]    The Court, of course, considers Plaintiffs' Second Amended Complaint, which Plaintiffs also attached as an exhibit to their Opposition Brief.  (D.E. No. 48-1).

[16]    The claims include: (i) "HARASSMENT STALKING/CYBER STALKING NJSA CONTINUED VIOLATION OF PRIVACY; N.J.S. 2C:41-2" (Count One); (ii) "CONTINUED DISCRIMINATION IN HOUSING BASED UPON RACE, DISABILITY AND NATIONAL ORIGIN, CONTINUED DENIAL OF TITLE 11 OF CONTINUED VIOLATION OF PUBLIC ACCOMMODATION, CONTINUED VIOLATION OF Title III, CONTINUED NEGLIGENCE, REPRISAL NJ CONSTITUTION ARTICLE 1 para 1, 18" (Count Two); (iii) "28 USC 2201 ET SEQ, FRCP 57 DECLARATORY JUDGEMENT AND EMERGENCY RESTRAINT AND INJUNCTIVE RELIEF" (Count Three); (iv) "CONTINUED TORT OF RECKLESS, INTENTIONAL, INFLICTION OF SEVERE EMOTIONAL DISTRESS" (Count Four); and (v) "CONTINUED DENIAL OF PUBLIC ACCOMMODATION UNDER NJSA10:1-2; NJSA10:5-4; NJSA10:5-12(d)(e)(f)" (Count Five).  (*See* SAC at 14, 21, 24, 27, & 26).

are unhappy with the Courts' Orders and Rulings," (*id.*).  According to the Palisades Defendants, Plaintiffs' allegations "do[] not, in any way, arise from facts or circumstances providing jurisdiction or federally cognizable causes of action."  (*Id.* at 3).  Moreover, they contend that "[t]he claims, particularly against the[m], are identical to matters pending in the State Court Law Division and New Jersey Supreme Court with, perhaps, an exacerbation of prior property damage that cannot, in any way, be deemed as arising from a Federal Question or 'disability' piercing basis."  (*Id.* at 4).  In other words, the Palisades Defendants argue that, "[e]ven if any of these claims are independently viable herein, each are unequivocally asserted under state laws and legal theories."  (*Id.* at 5).  Further still, they maintain that "[t]here is no basis for Plaintiffs to credibly argue why this Court should nevertheless exercise supplemental jurisdiction over them."  (*Id.*).  The Palisades Defendants additionally argue that, "[e]ven if Plaintiffs' 'new' allegations were factually accurate or had any merit whatsoever . . . , the proper procedure for them, and venue for the filing, is a motion under R. 4:9-1 to amend their existing State Court cases."  (*Id.* at 8).

In opposition, Plaintiffs argue that this Court has subject matter jurisdiction over all of their claims.  (*See, e.g.*, Opp. Br. at 22).  Plaintiffs contend: "[a]s to [the Palisades Defendants], Title III of the [ADA] prohibits discrimination on the basis of disability in places of public accommodation . . . Title II of the Civil Rights [Act] of 1964 (42 U.S.C. §2000a (a)) entitles ALL persons to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the grounds of color, religion, or national origin. The FHA is a Federal law that was set forth by Congress to prevent discrimination."  (*Id.*).  Accordingly, Plaintiffs argue, "[t]he district court has original [j]urisdiction over matters that fall[] under Title III and Title II, thus it has supplemental jurisdiction over all other state claims alleged."  (*Id.*).  Moreover, Plaintiffs assert

14

"[t]here is discrimination because Defendant Pec does not allow his white tenants to live in filth," and "Defense Counsel on page three of his brief ADMITS that the land lord did not provide a place of Public Accommodation to the plaintiffs, thus PLAINTIFFS have already won their case." (*Id.* at 4).

Plaintiffs further argue that "Angel Lopez is not free to [make] any motions to Amend when his complaint has been dismissed with prejudice since March 16[ ] 2023." (*Id.* at 5). Moreover, according to Plaintiffs, "Defendants are fully [aware] that there was only one plaintiff (Angel Lopez) [who] was involved in the 2020 [case]. The 2020 case was filed by a different law firm and that there were no counts for violation of privacy, no count for housing discrimination based upon race, disability, no count for injunctive relief, no counts for denial of public accommodation in the 2020 Complaint." (*Id.* at 5–6). Plaintiffs argue that their allegations "in the District Court are based on new acts that occurred in late 2023 after the time the statute of limitation expired on all their claims that were before the Bergen County Superior Court." (*Id.* at 15).

In reply, the Palisades Defendants argue that "Plaintiffs include images of alleged 'new' deficiencies in their [A]partment dealing with water infiltration and habitability issues." (Palisades Reply Br. at 7). "This," they contend, "is the quintessence of a continuing wrong/issue of the identical ilk complained of in the State Court actions, both dismissed and still pending. There is such a blatantly obvious nexus to that existing action, currently pending trial, along with the additional dismissed State Court action pending before the New Jersey Supreme Court, that it confounds all reason that Plaintiffs tried to sneak it in here." (*Id.* (emphasis omitted)). Further, the Palisades Defendants assert "that Plaintiffs' actions here openly fly in the face of the Entire Controversy Doctrine. Indeed, [Plaintiffs] literally admit and emphasize how they have controversies pending for years, arising from the same transactions and occurrences." (*Id.* at 8).

The Palisades Defendants identify that "Plaintiffs have a viable and actively pending Superior Court Law Division case that has yet to go to trial. They also have an active briefing schedule for their pending New Jersey Supreme Court Appeal regarding issues dealing with the Law Division cases (since their prior, equally specious, Interlocutory Appeal was Denied/Dismissed)." (*Id.* at 9).

### i.    *Rooker-Feldman*

As this Court explained in its prior Opinion, which it incorporates by reference herein, the *Rooker-Feldman* doctrine bars federal district courts from hearing cases "that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010); (*see* Op. at 23–27).  In other words, the *Rooker-Feldman* doctrine bars a suit where "a favorable decision in federal court would require negating or reversing the state-court decision."  *Great W. Mining & Mineral Co.*, 615 F.3d 159 at 170 n.4 (citation modified).[17]  The doctrine prohibits re-litigation where the party had a "full and fair opportunity" to litigate the issue in the prior proceeding.  *See Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir. 1992).

Once again, to the extent Plaintiffs assert the same or similar claims against Defendants in their Second Amended Complaint as they asserted (or could have asserted) against Defendants in their state court actions, and in particular, those state court complaints that have been dismissed *with prejudice*,[18] those claims are **DISMISSED** for lack of subject matter jurisdiction as improper

---

[17]    There are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (citation modified).  "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim."  *Id.*

[18]    (*See* Op. at 25 n.17).

and barred by the *Rooker-Feldman* doctrine. (*See* Op. at 25–27); *see also James v. Walls*, No. 07-0842, 2007 WL 1582660, at *4 (D.N.J. May 31, 2007) (finding the court "lack[ed] jurisdiction as to any claims concerning determinations made in the state actions referenced here under the *Rooker-Feldman* doctrine, as those claims were—or could have been—raised in those state actions, from which the plaintiff should have sought review through the state appellate process and, if warranted, certiorari to the United States Supreme Court"); *Karas v. Robbins*, No. 08-5264, 2009 WL 2912778 (D.N.J. Sept. 9, 2009), at *1, *5 (dismissing claims with prejudice as barred by *Rooker-Feldman* where a "New Jersey state court landlord-tenant action and the decisions made therein [we]re the very basis for the commencement of [p]laintiff's federal court action" and the claims asserted therein, noting the plaintiff presented no argument as to "why she was procedurally unable to assert her allegations of fraud and bribery in the prior state court action or through the state court appellate process").[19]

Ostensibly in response to this Court's previous ruling, Plaintiffs allege that "No *Rooker-Feldman* applies because all the facts related to the causes of action outlined in[ ] this complaint occurred after the [statute of limitations] had expired for Lopez." (SAC at 18, ¶ 22). Plaintiffs further add:

> Angel Lopez[] had been dismissed from the Superior Court Complaint at the defendants' request since March 16, 2023 and was never added back. Kazue Koizumi's complaint was also closed pending the completion of depositions when the new causes of action arose in this case starting in September 2023. Judge Geiger after taking over from Judge Nasta said that the plaintiff's complaint that was in the Superior Court would [not be] reopened until the depositions of Angel Lopez were completed. Judge Geiger reaffirmed Angel Lopez's dismissal from the Superior Court Complaint on November 3, 2023.

---

[19]    In fact, several of Plaintiffs' newly-added allegations in the Second Amended Complaint appear to be bald grievances with decisions made by various state court judges. (*See, e.g.*, SAC at 15–16, ¶¶ 1–8).

(*Id.* at 1–2 (citation modified)).

There are several issues with Plaintiffs' new arguments. First, the Court cannot discern from which date it should consider whether the alleged "new" causes of action against the Palisades Defendants did, indeed, arise. Stated differently, the Court cannot determine when the applicable statute of limitations began or expired, or what claims the limitations period(s) pertain to. Moreover, even if the Court accepts that "new" viable causes of actions arose in September of 2023 which Plaintiffs did not assert in their state court actions, Plaintiffs do not provide a sufficient explanation as to whether they were unable to assert those claims in one or more of the related state court actions *or* through the state court appellate process. (*See* Op. at 26).

Moreover, Plaintiffs claim that they "are victims of wrong doings by their landlord who *continued* to violate them after the Statute of limitations had expired in their Superior Court complaint that they had filed against the landlord." (SAC at 1 (emphasis added)). Plaintiffs repeat similar language throughout the Second Amended Complaint. (*See, e.g.*, *id.* at 3, ¶ 11 ("[A]ll of landlord's continuing acts against the plaintiffs are based on landlord's CONTINUED retaliation for reporting the landlord for causing plaintiffs to exist in an outrageous uninhabitable environment due to their race, national origin and Angel Lopez's disability."); *id.* at 10, ¶ 32 ("Landlord Edward Pec continuing through September 2023 to present, has CONTINUED to refuse to repair water leaks that continue to cause mold to grow in their apartment that adversely affects their health and has worsened Angel Lopez's Asthma and COPD."); *id.* at 13, ¶ 51 ("Upon plaintiffs grieving about the uninhabitable condition of his basement apartment home and filing several lawsuits against the Palisades LLC and Edward Pec, the landlord has CONTINUED TO REFUSE to repair the water leaks and CONTINUED TO REFUSE to remediate the mold growth.")). This Court agrees with

the Palisades Defendants in that these "continuing" harms "relate[] back to the original allegations" in Plaintiffs' state court matters. (Palisades Mov. Br. at 2).

Therefore, as before, Plaintiffs' claims against Defendants that are the same or similar claims (or claims that could have been raised) and were dismissed in the state court actions are barred under *Rooker-Feldman* and accordingly are **DISMISSED** *with prejudice.  See Gruen v. Gruen*, No. 21-17224, 2023 WL 7194902, at *4 (D.N.J. Nov. 1, 2023) (dismissing claims barred by *Rooker-Feldman with prejudice*), *aff'd*, No. 23-3080, 2024 WL 3717093 (3d Cir. 2024); *Perez v. Seterus, Inc.*, No. 17-5862, 2018 WL 534159, at *3 (D.N.J. Jan. 24, 2018) (first citing *Bakshi v. Bergen Cty. Superior Court*, 687 F. App'x 215, 218 (3d Cir. 2017) (concluding that, based on the *Rooker-Feldman* doctrine, "the District Court lacked subject-matter jurisdiction," and affirming "its orders dismissing [plaintiff's] claims with prejudice and denying reconsideration"); and then citing *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012) (affirming the district court's dismissal *with prejudice* on *Rooker-Feldman* grounds)).

### ii.        *Younger* Abstention *& Colorado River* Abstention

Under the *Younger* abstention doctrine, "district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010).[20] *Younger* abstention is "fully applicable" to civil state judicial proceedings "when important state interests are involved." *Middlesex Cnty. Ethics Comm. v.*

---

[20]        In 2013, the Supreme Court clarified the scope of the *Younger* doctrine, holding that abstention is appropriate in only three "exceptional" situations: (i) "state criminal prosecutions"; (ii) "civil enforcement proceedings"; and (iii) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 82 (2013); *see also In re One2One Commc'ns, LLC*, 805 F.3d 428, 440 (3d Cir. 2015) (Krause, J., concurring) ("In *Sprint* . . . the Court refused to extend the three 'exceptional' situations where *Younger* abstention is appropriate, reaffirming Chief Justice Marshall's 'early and famous[]' assertion of federal courts' obligation to hear and decide cases within their jurisdiction." (second alteration in original)).

*Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  Relatedly, under the *Colorado River* abstention doctrine, a federal court may abstain from hearing a case "when there is a parallel ongoing state court proceeding."  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). "*Colorado River* applies only when the parties and claims in the state suit are 'identical,' or at least 'effectively the same' as those in the federal suit."  *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 465 n.7 (3d Cir. 2019) (quoting *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017)).[21]

Again, "the gravamen of Plaintiffs' claims asserted in the Second Amended Complaint are inextricably intertwined with the related state court actions that involve landlord-tenant disputes between Plaintiffs and the Palisades Defendants."  (Op. at 29).  After a careful comparison of the new allegations in the Second Amended Complaint, this Court holds that Plaintiffs have not alleged any new facts that warrant a deviation from the Court's prior analysis of the *Spring City* factors:

> [T]he state court had jurisdiction over these claims first, piecemeal litigation should be avoided, Plaintiffs sought state court jurisdiction first, state law controls over the vast majority of Plaintiffs' claims, and the state court will adequately protect the interests of the parties. Additionally, there are important state interests involved as landlord-tenant disputes are typically heard and resolved in state court. Further, there is no indication that Plaintiffs were unable to raise the claims in their Amended Complaint in state court, that the state court could not provide adequate relief for those claims, and/or that those claims could not be litigated as a part of the ongoing state court proceedings to which they relate.

---

[21]    Once the court determines that proceedings are parallel, the court assesses six factors to determine whether "extraordinary circumstances" warrant abstention: "(1) which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties."  *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999).

(*Id.* (citing *Bauer v. Pa. State Bd. of Auctioneer Examiners*, 188 F. Supp. 3d 510, 516 (W.D. Pa. 2016))). Therefore, to the extent Plaintiffs filed their Second Amended Complaint in this Court in an attempt to raise other or additional claims they could have or should have asserted in their pending related state court actions and/or in an attempt to potentially obtain a different result than in their pending related state court actions, the Court again declines to interfere with those pending actions and accordingly abstains from exercising jurisdiction over this action. *See Abreu v. Ochoa-Salazar*, No. 17-3109, 2017 WL 1900729, at *2 (D.N.J. May 8, 2017). Accordingly, Plaintiffs claims that are barred under *Younger* are **DISMISSED** *without prejudice*. *See Eldakroury v. Att'y Gen. of New Jersey*, 601 F. App'x 156, 157–58 (3d Cir. 2015) (vacating the district court's dismissal under *Younger with prejudice* to dismissal *without prejudice* because "[s]uch a non-merits dismissal [under *Younger*] is by definition without prejudice").

### iii.    *Plaintiffs' Remaining Claims*

To the extent any federal claims remain in Plaintiffs' Amended Complaint that are not barred by *Rooker-Feldman* and/or dismissed under the *Younger* and/or *Colorado River* abstention doctrines, those claims are dismissed for failure to state a claim.[22]

*Title III of the Americans with Disabilities Act*. "Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations." *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 164

---

[22]    As before, because Plaintiffs include numerous alleged claims within individual counts of the Amended Complaint (*see, e.g.*, SAC at 21 (listing "Count Two" as "CONTINUED DISCRIMINATION IN HOUSING BASED UPON RACE, DISABILITY AND NATIONAL ORIGIN, CONTINUED DENIAL OF TITLE 11 OF CONTINUED VIOLATION OF PUBLIC ACCOMMODATION, CONTINUED VIOLATION OF Title III, CONTINUED NEGLIGENCE, REPRISAL NJ CONSTITUTION ARTICLE 1 para 1, 18")), it is difficult for the Court to decipher what specific causes of action Plaintiffs are alleging, the factual bases supporting each of those claims, and the law or laws under which they are bringing each claim. The causes of action listed herein are those that the Court can glean from the Second Amended Complaint.

(3d Cir. 2006).  Claims of discrimination based on disability under the ADA may proceed under any or all of the following three theories of liability: (i) disparate treatment or intentional discrimination; (ii) disparate impact; and (iii) failure to make reasonable accommodation.  *See Allentown Victory Church v. City of Allentown*, No. 21-3021, 2022 WL 4071851, at *4 (E.D. Pa. Sept. 1, 2022); *W. Easton Two, LP v. Borough Council of W. Easton*, 489 F. Supp. 3d 333, 362 (E.D. Pa. Sept. 25, 2020); *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).

To state a claim for disability discrimination under Title III of the ADA, "a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of ***any place of public accommodation***; (3) by the public accommodation's owner, lessor, or operator."  *Whichard v. Valley Forge Casino Resort*, No. 22- 3597, 2024 WL 1704980, at *4 (E.D. Pa. Apr. 18, 2024) (emphasis added).  To state a public-accommodation claim under the ADA, the "plaintiff must show that (1) he is disabled, (2) ***the complained-of venue is a 'public accommodation'*** under Title III of the ADA, and (3) the venue unlawfully discriminated against the plaintiff on the basis of his disability by failing to make a reasonable modification that was necessary to accommodate his disability."  *Herrera v. Nike, Inc.*, No. 23-2947, 2024 WL 3159295, at *2 (D.N.J. June 25, 2024) (citing *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019) (emphasis added)).

Plaintiffs continue to raise what appears to be a disparate treatment/intentional discrimination and/or "failure to make reasonable accommodation" theories.  (*See, e.g.*, Op. at 33; *see also* SAC at 21–24 (Count Two)).  Specifically, Plaintiffs allege that "[t]he landlord discriminated by refusing to allow Angel Lopez and his wife equal enjoyment of the apartment and rights to repairs against Angel Lopez due to his disability of Asthma and COPD that was

caused to him by living in the uninhabitable tenancy." (SAC at 22, ¶ 8). Plaintiffs further add allegations that "the landlord refused to make accommodations in the forms of repairs to their apartment to make them uncomfortable and force the plaintiffs out of their home because he did not want disabled tenants who would complain about the worsening of their condition[,]" and "refused to provide a handicapped parking space to the Angel Lopez after he was advised that one was necessary." (*Id*. ¶¶ 9–15).

Even assuming, *arguendo*, that Plaintiffs sufficiently "allege what disability or disabilities they have that entitle them to accommodations under the ADA, whether the Palisades Defendants knew about their disabilities, [and] how the Palisades Defendants purportedly denied their requests for accommodations," it remains true that the Second Amended Complaint "do[es] not sufficiently allege how [Plaintiffs] were discriminated against on the basis of a disability 'in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any ***place of public accommodation***[,]' [n]or do Plaintiffs allege how the Complex and/or their Apartment constitutes a place of 'public accommodation' as that term is defined in the statute." (*See* Op. at 34 (emphasis added) (citation modified) (first quoting *Whichard*, 2024 WL 1704980, at *4; then citing 42 U.S.C. § 12181(7))); *see also Mitchell v. Walters*, No. 10-1061, 2010 WL 3614210, at *4 (D.N.J. Sept. 8, 2010) (collecting cases holding that apartments are not "public accommodations" within the meaning of the ADA and holding that "[a] residential apartment complex, such as the [one] where [p]laintiff[s] claim[] [d]efendants failed to accommodate [their] disabilities, does not fall into any of those groups"); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002).[23]

---

[23]     Relevant here, under the ADA, twelve categories of establishments are places of public accommodation—none of which encompass an apartment building or complex:

23

In short, the portion of Count Two of the Amended Complaint alleging a violation of the ADA—whether raised under a disparate treatment/intentional discrimination and/or "failure to make reasonable accommodation" theory—is **DISMISSED** *with prejudice*, because Plaintiffs have amended their allegations thrice—including once after this Court's prior Opinion—and any further attempt would, at this point, be futile.  *See Wolf v. New Jersey*, No. 19-16979, 2023 WL 2367991, at *6 (D.N.J. Mar. 6, 2023), *aff'd*, No. 23-1635, 2024 WL 5154023 (3d Cir. 2024) (dismissing an amended complaint with prejudice where plaintiffs failed to plead that defendants were private entities who operated a place of public accommodation as defined by the ADA).

*The Fair Housing Act*.  "The FHA prohibits discrimination based on 'race, color, religion, sex, familial status, or national origin' in various real estate-related transactions." *Butler v. Sundo Cap., LLC*, 559 F. Supp. 3d 452, 456 (W.D. Pa. Sept. 10, 2021) (quoting 42 U.S.C. § 3604).[24]  A

---

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7); *see also Mitchell*, 2010 WL 3614210, at *4.

[24]     Congress passed the Fair Housing Amendments Act ("FHAA") to extend the coverage of the FHA to include people with disabilities.  *See* 42 U.S.C. § 3604 *et seq.*; *see also Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) ("The [FHA] passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia,* race, gender, and national origin. 42 U.S.C. § 3601 *et seq.* Under the FHAA, which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is

plaintiff may state a claim for a violation of the FHA under one of three theories: (i) disparate treatment, or intentional discrimination; (ii) disparate impact; or (iii) failure to make a reasonable accommodation. *See Cmty. Servs., Inc*., 421 F.3d at 176.

Plaintiffs continue to allege, in a conclusory fashion, that the Palisades Defendants "have been discriminating and retaliating against [them] by refusing to repair the water leaks and refus[ing] to remediate the mold" in their Apartment, "thereby discriminating against them in their full and equal enjoyment of the goods, services, facilities, privileges, advantages, to fair housing and denying them their rights to public accommodation"; that the Palisades Defendants' ongoing "failure to make the repairs is based on [P]laintiffs race [and/or] national [o]rigin and Angel Lopez's disability, retaliation for grieving [that] amounts to a denial of public accommodation"; and that Plaintiffs "continue[] to be denied their rights to proper [h]ousing under the [FHA.]" (*See* SAC at 23–24, ¶¶ 23–25). Plaintiffs add allegations in the Second Amended Complaint claiming that "Defendant Pec has refused to provide a handicapped parking space to [Plaintiff Lopez] after he was advised that one was necessary." (*See id*. at 22, ¶ 10). The amended pleading further claims that "Angel Lopez is forced to park far away from his apartment and walk a long distance impacting his Asthma breathing especially when he has to carry grocery bags." (*Id.* at ¶ 12).

However, these allegations fail to sufficiently state a claim under the FHA—whether under a theory of disparate treatment/intentional discrimination or a theory of "failure to make a reasonable accommodation." (*See* Op. at 35). As for the former, it remains true that Plaintiffs "do not sufficiently allege that the Palisades Defendants 'discriminated intentionally' against them based on race or national origin[.]" (*See id*. at 34–35). Nor do they adequately allege how refusing

---

unlawful [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." (citation modified)). For consistency's sake, the Court refers to "the FHA" herein.

to fix water leaks and mold growth constitutes discrimination on the basis of race and/or national origin in violation of the FHA.[25]  Similarly, Lopez does not "allege sufficient facts from which one could infer that [Lopez's] disability was a motivating factor behind" any specific treatment he received from Defendant Pec—or any other Defendant.  *See, e.g.*, *Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 74 (2d Cir. 2021) (declining to find that a landlord had engaged in intentional discrimination where "[o]nly untethered speculation support[ed] an inference of animus [based on a protected class] on the part of the . . . Defendants.").

As for a claim arising under the reasonable accommodations provision of the FHA, the Court must consider three factors: "whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002).  Under the reasonable accommodations provision, "the initial burden is on the plaintiff to demonstrate that the accommodations that [he] requested are necessary to afford [him an] equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodations are unreasonable."  *Id.* at 459 (internal quotation marks omitted).  To show that a requested accommodation is necessary, "plaintiff[ ] must show that, but for the accommodation, [he] likely will be denied an equal opportunity to enjoy the housing of [his] choice."  *Id.* at 460 (internal quotation marks omitted).  "[T]he [FHA's] necessity element requires that an accommodation be essential, not just preferable."  *Vorchheimer v. Philadelphian*

---

[25]     Lopez is Puerto Rican and Koizumi is Japanese.  (SAC at 7, ¶ 1).  Plaintiffs' sole non-conclusory allegation in the Second Amended Complaint referencing race and/or national origin is an allegation stating: "Defendant Pec said that he was glad that he was Polish and that Puerto Ricans use horse drugs."  (*Id*. at 21, ¶ 6).  The Court again notes that while this statement is offensive and distasteful, it does not show or state a claim for discrimination in violation of the FHA.

*Owners Ass'n*, 903 F.3d 100, 107 (3d Cir. 2018). "Gauging necessity [also] requires considering whether an alternative on offer satisfies the goal of equal housing opportunity." *Id.* at 108. The proposed alternative must afford the handicapped individual the "equal opportunity to use and to enjoy [their] housing." *Id.* at 109. Therefore, necessity "may require more than just those accommodations that are absolutely necessary for the disabled individual's treatment or basic ability to function." *Id.* (internal quotation marks omitted).

To be sure, "the FHA may, in certain cases, entitle a handicapped tenant to a reserved parking space adjacent to the tenant's dwelling[,]" but the "'reasonable accommodation inquiry is highly fact-specific, requiring a case-by-case determination.'" *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 249 (D.N.J. Oct. 29, 2001) (first citing *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895–96 (7th Cir.), *as amended* (Aug. 26, 1996) (holding that increasing the number of handicapped parking spaces was not a reasonable accommodation); and then quoting *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996)).

Here, the Second Amended Complaint alleges, in a conclusory fashion, that "Defendant Pec has refused to provide a handicapped parking space to [ ] Angel Lopez after he was advised that one was necessary." (*See* SAC at 22, ¶ 10). The pleading states no more than that "Lopez is forced to park far away from his apartment and walk a long distance impacting his Asthma breathing especially when he has to carry grocery bags." (*Id.* at ¶ 12). Critically, Plaintiff Lopez fails to plead specific facts that reflect how the Palisades Defendants denied him a reasonable accommodation that was ***necessary*** given his alleged disability—asthma. Apart from one conclusory allegation that walking long distances "impact[s]" Plaintiff Lopez's asthma— particularly when carrying grocery bags—Plaintiff Lopez does not allege how a handicapped parking space would be necessary to afford him an equal opportunity to use and enjoy his dwelling,

as opposed to being something he would merely prefer.  *See, e.g.*, *Spieth v. Bucks Cnty. Hous. Auth.*, 594 F. Supp. 2d 584, 593 (E.D. Pa. Jan. 28, 2009); *cf. Gifford v. City of Jersey City*, No. 18-5422, 2019 WL 1579520, at *8 (D.N.J. Apr. 12, 2019) (denying motion to dismiss FHA claim where plaintiff alleged and included her physician's notes that indicated how the requested accommodation was "medically necessary" to permit plaintiff's travel "without delay and without severe pain that she currently experiences"); *cf. United States v. Aion Mgmt., LLC*, No. 23-0742, 2025 WL 843620, at *14 (D. Del. Mar. 18, 2025) (denying motion to dismiss FHA claim where plaintiffs alleged that they were unable to walk more than 100 feet without needing to rest; required the assistance of mobility aids like canes, crutches, and walkers; and became very fatigued when walking even short distances).  Further still, although Plaintiffs cite to an "exhibit" to support their allegation that Defendant Pec denied them a handicapped parking spot, (*see* SAC at 22, ¶ 10), they fail to label the exhibit or to describe it with sufficient detail for this Court to discern what, exactly, they refer to.  *See Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 604 (D.N.J. Apr. 17, 2014) ("As the Third Circuit has stated: 'Judges are not like pigs, hunting for truffles buried in the record.'" (citing *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006))).[26]

In short, although this Court previously put Plaintiffs on notice that their Amended Complaint insufficiently alleged any violation of the FHA, (*see* Op. at 34–36), Plaintiffs' Second Amended Complaint remains conclusory, difficult to decipher, and devoid of clear references to the extensive record that they themselves have provided.  Therefore, the portion of Count Two of

---

[26]    Moreover, the Court reiterates that although Plaintiffs have attached several documents to their Complaint, it is not necessarily "appropriate to consider [those documents] for the truth of the matters asserted therein."  *See Ribaudo v. Desimone*, No. 18-1190, 2019 WL 1906269, at *5 (M.D. Pa. Apr. 5, 2019), *report and recommendation adopted*, No. 18-1190, 2019 WL 1903404 (M.D. Pa. Apr. 29, 2019); *see also Logan*, 742 F. App'x at 632 ("[W]e generally would not consider a deposition transcript attached to a complaint for the truth of the matters asserted therein.").  Further, to the extent Plaintiffs intend to refer to the document attached as "Exhibit 7" to the Second Amended Complaint, as explained *supra*, the Court does not consider Angel Lopez's affidavit.  (*See* D.E. No. 42-3).

the Second Amended Complaint alleging a violation of the FHA is likewise **DISMISSED** *with prejudice*. *See White v. Bethesda Project Inc.*, 672 F. App'x 218, 219 (3d Cir. 2017) (affirming dismissal of plaintiff's second amended complaint *with prejudice*, because the district court properly determined that further leave to amend would be futile where it was unclear "from the complaint how the defendant's actions violated [the FHA] or how those actions could be the product of illegal discrimination").

    ***Title II of the Civil Rights Act***.   Title II of the Civil Rights Act of 1964 prevents discrimination by places of public accommodation. *See* 42 U.S.C. § 2000a(a); *Jabri v. Gonzalez*, No. 22-7448, 2024 WL 4719492, at *8 (D.N.J. Nov. 7, 2024).   The sole remedy available under Title II is a civil action for preventive relief, such as an injunction. *See Livingstone v. Hugo Boss Store, Atl. City*, No. 21-1971, 2021 WL 3910149, at *5 (D.N.J. Sept. 1, 2021) (citing *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004)).   As this Court explained, "before bringing a claim under Title II, a plaintiff, pursuant to Section 2000a-3(c), must first notify a state or local government entity authorized to grant relief from the alleged discrimination or to institute criminal proceedings." *Jabri*, 2024 WL 4719492, at *8 (citing 42 U.S.C. § 2000a-3(c)).   "No civil action may be brought under Title II before thirty days after written notice of the matter to the appropriate state or local entity." *Livingstone*, 2021 WL 3910149, at *5 (citing 42 U.S.C. § 2000a-3(c)).   Indeed, "[c]ompliance with Section 2000a-3(c) is a ***mandatory jurisdictional prerequisite*** and 'a Title II plaintiff must demonstrate that he or she has satisfied the notice requirement before a federal court has subject matter jurisdiction to hear the plaintiff's claim.'" *Waiters v. Republic Bank*, No. 24-5728, 2024 WL 1928331, at *2 (D.N.J. May 2, 2024) (emphasis added) (quoting *Livingstone*, 2021 WL 3910149, at *5).

Because Plaintiffs failed to include any new allegations or documentation in the Second Amended Complaint that reflect their satisfaction of the notice requirement, this Court rests on its previous ruling.  (*See* Op. at 36–38).  Additionally, Plaintiffs do not allege how the Complex or the Apartment constitute a "place of public accommodation" as that term is defined in the statute.  *See* 42 U.S.C. § 2000a(b).  Nor have Plaintiffs sufficiently alleged facts showing they were discriminated against on the basis of race and/or national origin, or that they were denied the full benefits or enjoyment of a public accommodation that were available to similarly situated persons outside of their protected class.  *See Jabri*, 2024 WL 4719492, at *8.  Therefore, the portion of Count Two of the Amended Complaint alleging a violation of Title II of the Civil Rights Act is also **DISMISSED** *with prejudice*.[27]  *See Jones v. City of Philadelphia Hous. Dep't*, 573 F. App'x 138 (3d Cir. 2014) (affirming district court's dismissal *with prejudice* for failure to state a claim where any further amendment of plaintiff's claims brought under the Civil Rights Act would be futile); *see also Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (same).

### B.    The Broderick Defendants' Motion to Dismiss

Plaintiffs allege three causes of action against the Broderick Defendants in the Second Amended Complaint: (i) invasion of privacy (Count Six); (ii) place of public accommodation violations (Count Seven); and (iii) class action (Count Eight).  (*See generally* SAC).  Plaintiffs omit from the Second Amended Complaint their claim for punitive damages, alleged as Count

---

[27]    The Court further rests on the reasoning in its previous Opinion and **DISMISSES** *with prejudice* Plaintiffs' claim for declaratory and injunctive relief in Count Three of the Second Amended Complaint for failure to state a claim, as an additional amendment would be futile.  Moreover, to the extent not already dismissed above, Plaintiffs' remaining state law claims in the Second Amended Complaint are **DISMISSED** for lack of subject matter jurisdiction, *without prejudice* to Plaintiffs' right to file a complaint in a state court of competent jurisdiction, to the extent appropriate.  (*See* Op. at 38–39).

Nine in the Amended Complaint, which this Court dismissed *with prejudice* in its prior Opinion. (*See generally* SAC; Op. at 18–19).

As for Plaintiffs' remaining claims against the Broderick Defendants in Counts Six, Seven, and Eight, this Court previously held that:

> Plaintiffs do not allege any federal claims against the Broderick Defendants in the Amended Complaint. Accordingly, the Court lacks federal question jurisdiction over Plaintiffs' claims against the Broderick Defendants. Further, it appears undisputed that Plaintiffs and the Broderick Defendants are all residents of New Jersey, and therefore the Court also lacks diversity jurisdiction over Plaintiffs' claims against the Broderick Defendants. Indeed, Plaintiffs do not contend otherwise. Thus, the only way this Court could have subject matter jurisdiction over Plaintiffs' claims against the Broderick Defendants is by exercising supplemental jurisdiction over those claims.

(Op. at 14 n.12 (citation modified)).

The Broderick Defendants argue Plaintiffs' Second Amended Complaint suffers from the same deficiencies the Court identified in their Amended Complaint. (Broderick Mov. Br. at 2). They contend that Plaintiffs' allegations against them remain essentially unchanged, except that, in Count Six, Plaintiffs now allege that the "right to privacy is guaranteed under the 4th Amendment and 14th Amendment," and that "[t]he source of privacy is Federal." (SAC at 28, ¶¶ 3–5; *see also* Broderick Mov. Br. at 2). The Broderick Defendants argue that "[s]uch an alteration to the claim was in obvious response to the Court's earlier ruling that Plaintiffs' purely state law claims did not confer federal subject matter jurisdiction over the causes of action asserted against the Broderick Defendants." (Broderick Mov. Br. at 2). In any event, the Broderick Defendants maintain that "as there is no legitimate dispute that the Broderick Defendants are private actors, rather than state actors, Plaintiffs are barred from bringing such constitutional claims against them as a matter of law." (*Id*.). This, they contend, "compels not only a dismissal of that claim, but also the inescapable result that Plaintiffs' remaining claims continue to lack a cognizable basis for this

Court to find the existence of subject matter jurisdiction or to alternatively exercise supplemental jurisdiction." (*Id.*).

In opposition, Plaintiffs counter that "[b]ecause the causes of action against the Broderick defendants arise[] under the fourth and fourteenth Amendment to the United States Constitution, the district court has original jurisdiction over the claims against them," and "[b]ecause it has original jurisdiction over the Broderick Defendants under the Constitution, it also has supplemental jurisdiction over the state claims against them pursuant to 28 USC 1367." (Opp. Br. at 22). Plaintiffs contend that "[t]he Broderick defendants are State Officers who violated the privacy rights of plaintiff Koizumi in their role as State Officers. But for their State Officer roles, Ms. Koizumi would not have attended the deposition at the Broderick premises on September 15[,] 2023. Their very act in compelling the deposition was based upon State authority." (*Id.* at 24). Plaintiffs reason this is so because "a lawyer can sign a summons in the name of the Clerk of the Court of the State of New Jersey and compel a litigant's actions." (*Id.*).

The Broderick Defendants respond that "Plaintiffs ignore clear legal precedent that (1) claims alleging such violations of the United States Constitution cannot be brought against purely private actors, as opposed to state actors, and (2) even as 'officers of the court,' attorneys engaged in private practice, without more, are not state actors." (Broderick Reply Br. at 2). They further insist that "Plaintiffs do not, because they cannot, cite a single authority or decision reflecting a contrary position, and the claim at Count Six accordingly fails as a matter of law." (*Id.*).

To be sure, claims under the Fourth and Fourteenth Amendment may only be asserted against "state actors or private actors acting under color of state law who deprive individuals of federally protected rights." *Fioriglio v. City of Atl. City*, 996 F. Supp. 379, 385 (D.N.J. Mar. 5, 1998), *aff'd*, 185 F.3d 861 (3d Cir. 1999). Moreover, "[p]rivate conduct will be considered 'state

action,'" only "if 'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *May v. Chirichello*, No. 09-3253, 2009 WL 3818146, at *2 (D.N.J. Nov. 13, 2009) (citation modified) (quoting *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Importantly, "[i]t is settled law that an attorney may be entitled to dismissal of a civil rights action [against him or her] . . . because 'a lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983.'" *Mouratidis v. Mourtos*, No. 18-1176, 2018 WL 6050665, at *3 (D.N.J. Nov. 19, 2018) (quoting *Polk County v. Dodson*, 454 U.S. 312, 318 (1981)); *see also Kissell v. Pennsylvania Off. of Budget Legal Off.*, No. 24-2254, 2025 WL 1367817, at *2 (3d Cir. 2025) ("A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." (quoting *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (citation modified))).

Here, the Second Amended Complaint reflects that the Broderick Defendants are private attorneys—not state actors: Plaintiffs have "not alleged in any meaningful way that these private attorneys ever acted on behalf of the State during their representation of [them] or otherwise." *See Mouratidis*, 2018 WL 6050665, at *3. For example, while "[i]t is true that a private party will be deemed a state actor for purposes of section 1983 liability if he or she has engaged in joint activity with state actors," Plaintiffs have not alleged any plausible facts sufficient to suggest or support "a claim of joint activity" of any sort. *See Mikhail v. Kahn*, 572 F. App'x 68, 71–72 (3d Cir. 2014) (internal citations omitted). Accordingly, Plaintiffs' Fourth and Fourteenth Amendment privacy claims are insufficient to invoke federal question jurisdiction. Because Plaintiffs do not maintain that diversity jurisdiction exists, this Court lacks a basis to exercise supplemental jurisdiction over

the claims in Count Seven, even assuming, *arguendo*, that the Court would find supplemental jurisdiction appropriate in such a circumstance. (*See* Op. at 17 ("Plaintiffs do not explain how the principles of judicial economy, convenience, fairness, or comity apply to the facts of this action, nor do Plaintiffs convince the Court why it should exercise supplemental jurisdiction over purely state law claims against non-diverse defendants. Plaintiffs also do not explain why these claims, stemming from alleged conduct during a deposition that took place in a related state court action, should be adjudicated in this Court."); *see generally* SAC & Opp. Br. (failing to address the same)).[28] Accordingly, the Court **DISMISSES** the allegations in Counts Six and Seven for lack of subject matter jurisdiction *without prejudice* to Plaintiffs' right to file a complaint in a state court of competent jurisdiction, to the extent appropriate. *See Mouratidis*, 2018 WL 6050665, at *4.[29]

Moreover, to the extent Plaintiffs bring their claim in Count Eight under Federal Rule of Civil Procedure 23, that claim again fails: the Court dismisses Counts Eight for failure to state a claim based on its prior analysis of the allegations in the Amended Complaint. (*See* Op. at 17–19 ("A class action under Rule 23 is not an independent cause of action; rather, it is a procedural mechanism upon which class representatives can rely to aggregate claims while asserting independent, substantive causes of action on behalf of a class . . . . Tellingly, Plaintiffs do not cite to any legal authority to the contrary nor any case law stating a plaintiff can bring a class action as

---

[28] Count Seven is unaltered from the Amended Complaint, with the exception of minor typographical and wording changes. (*Compare* Am. Compl. at 28–31, *with* SAC at 33–36). The same is true of Count Eight. (*Compare* Am. Compl. at 31–32, *with* SAC at 37–38).

[29] In the alternative, the Court **DISMISSES** *with prejudice* any claims brought against the Broderick Defendants pursuant to 42 U.S.C. § 1983, for the reasons explained above and given that Plaintiffs have not alleged a single plausible fact sufficient to support "a claim of joint activity." *See Mikhail*, 572 F. App'x at 71–72 (internal citations omitted); *see also Nemeth v. Off. of the Clerk of the New Jersey Superior Ct.*, No. 19-16809, 2020 WL 2537754, at *9 (D.N.J. May 19, 2020), *aff'd sub nom. Nemeth v. Off. of Clerk of Superior Ct. of New Jersey*, 837 F. App'x 924 (3d Cir. 2020) ("Law Firm Defendants' mere participation in the litigation process did not transform them into state actors, and thus, Plaintiff's claims against them are dismissed. . . . Plaintiff's claims against all Defendants are dismissed **WITH PREJUDICE**.").

an independent cause of action in a complaint in federal court.")).  Thus, as this Court previously held, to the extent Plaintiffs bring their "class action" claim in Count Eight of the Second Amended Complaint under Rule 23, they fail to state a claim.  Accordingly, Count Eight is **DISMISSED** *with prejudice* for failure to state a claim.[30]

## IV.    CONCLUSION

Based on the foregoing, the Broderick Defendants' motion to dismiss Plaintiffs' Second Amended Complaint (D.E. No. 46) is **GRANTED**, and the Palisades Defendants' motion to dismiss Plaintiffs' Second Amended Complaint (D.E. No. 47) is **GRANTED**.  An appropriate Order accompanies this Opinion.

**Dated**: December 31, 2025                                         *s/ Esther Salas*
                                                                                     **Esther Salas, U.S.D.J.**

---

[30]     To the extent Plaintiffs bring this claim instead under state law, the Court again declines to exercise supplemental jurisdiction over the claim.  (*See* Op. at 18 n.15).